## FARMERS' FIRE INS. CO. OF YORK, PA., *vs.* FREDERICK W. BAKER.

*Provision Providing for Avoidance of Policy if Property be Levied Upon or Taken Into Possession Under Legal Proceedings—Temporary Appointment of Receiver for a Farm not a Levy—Waiver of Proof of Loss—Insurer Estopped by Misleading Conduct From Setting up as Defense That Proof of Loss Was not Made According to Policy—Parties to Bill in Equity to Discover and Enforce Lost Policy.*

A policy of fire insurance on certain farm buildings provided that the insurance "shall cease at and from the time the property hereby insured shall be levied on or taken into possession or custody under any proceeding in law or equity." By an endorsement on the policy the loss was made payable to a mortgagee. The mortgage debt being overdue, the mortgagee filed a bill to forclose, and before sale a petition was filed in the case setting forth that it was for the interest of all parties that the farm should be cultivated for the ensuing season, and upon this petition an order was passed appointing a receiver to rent the farm to the tenant who was then occupying it, which was accordingly done. The dwelling house on the farm having been thereafter destroyed by fire, the insurer alleged that the policy was avoided under the above-mentioned clause. *Held*, that the terms, "levied on or taken into possession and custody," as used in this clause, mean that some step in a proceeding has been taken which, if perfected, will take from the insured, or affect him in, his title and possession, and do not contemplate such a taking into custody as resulted from the appointment of the receiver in this case, which could not have any ultimate effect upon the title and posession of the insured and was designed only to make temporary provision for the care of the property.

A provision of the policy was that "said company shall in no case be deemed to have waived a full, literal and strict compliance with, and performance of, each and every of the terms, provisions, conditions and stipulations in this policy contained and hereto annexed, to be performed and observed by and on the part of the insured * * unless such waiver be expressed and manifested in writing under the signatures of the president and secretary of said company." *Held*, that this stipulation refers to the conditions which go to the making of the contract of insurance, and not to provisions relating to the proof of loss which are to be performed in the event of a loss, and consequently this stipulation does not operate to prevent the company from making a

waiver of proof of loss by conduct or otherwise than by an express agreement.

One of the conditions in a policy of insurance on certain farm buildings, the loss being made payable to the mortgagee, provided that persons suffering a loss must give notice thereof in writing to the secretary of the company and within thirty days deliver a copy of the written part of the policy, accompanied with an affidavit as to the circumstances of the loss, etc. Another condition was that in case loss under the policy is made payable to a third party, then the assured party and not the assignee or third party must make the requisite proofs of loss. One of the buildings covered by the insurance was destroyed by fire and at that time the policy was lost or mislaid. The plaintiff herein, the mortgagee, notified defendant's agent of the loss on the day of its occurrence, August, 8th. The agents replied on the next day that they had reported the loss to the company and that the claim of the mortgagee would be preferred to that of the assured. Subsequently defendant's general agent promised to examine the premises. On August 14th, the defendant company was directly notified by letter of the fire. On August 25th, in an interview between plaintiff's attorney and defendant's general agent the latter referred the attorney to the policy and said that the claim must be made within six months, but did not offer a copy of the policy which he knew was lost. On August 27th, plaintiff's attorney wrote to the defendant setting forth the nature of his claim as mortgagee, the number of the policy and alleging a total loss. The defendant answered saying that they had no such numbered policy in force and if it had it would be obligatory for the assured party to make the proofs of loss. On September 27th, plaintiff sent to the company a sworn statement of his loss and in October the company denied its liability under the policy and sent a printed form thereof. *Held*, that the statement of defendant's agent that plaintiff's claim could be made within six months when plaintiff did not have the policy and defendant did not offer to furnish a copy was misleading, and the retention of plaintiff's proofs of loss so that he could not make affidavit to them until after the expiration of thirty days together with the misleading and temporizing answers of the defendant to the plaintiff's letters, constitute such conduct on the part of the defendant as estops it from setting up the defense that the proofs of loss were not furnished in strict compliance with the terms of the policy.

A policy of fire insurance was made payable to the mortgagee, without naming him. When a loss occurred the policy could not be found and the mortgagee filed a bill in equity for a discovery of the terms of the policy and the payment of the loss. Defendant's answer alleged that the name of the plaintiff nowhere occurs in the policy issued by it and that there is no privity of contract between it and the plaintiff. *Held*, that the mortgagor, the assured, was not a necessary party to the bill; that the mortgagee had a right to institute the suit and the fact that he was not expressly named in the endorsement on the policy made by defendant's agent does not affect his rights.

Appeal from a decree of the Circuit Court of Baltimore City (RITCHIE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Frank P. Clark*, for the appellant.

*John L. G. Lee*, for the appellee.

JONES, J., delivered the opinion of the Court.

The cause of action in this case upon which it was instituted in the Court below is a contract of insurance against loss by fire which contains the following stipulations numbered respectively 6, 9, 14, and 18.

" 6. Persons sustaining loss or damage by fire shall forthwith give notice thereof, in writing, to the secretary of the company, and within thirty days deliver a true copy of the written part of the policy, with the endorsements thereon (if any) and a particular account of the loss or damage ; and they shall accompany the same with their oath or affirmation, declaring the said account to be true and just; showing also what other insurances (if any) have been made on the same property, and giving a copy of the written portion of the policy of each company with the endorsement thereon (if any); whether incumbered, and if so, how, and to what amount; in what manner the building insured or containing the property insured was occupied at the time of the loss, and who were occupants thereof; and when and how the fire originated, so far as they know or believe or have any information."

" 9. Any misrepresentation or concealment, fraud or false swearing, shall cause a forfeiture of all claims on the insurers, and shall be a full bar to all remedies against this company under this policy. And said company shall in no case be deemed to have waived a full, literal and strict compliance with, and performance of, each and every of the terms, provisions, conditions and stipulations in this policy contained and hereto annexed, to be performed and observed by and on the part of the insured, and every person claiming by, through, or

under them, unless such waiver be expressed and manifested in writing, under the signatures of the president and secretary of said company."

" 14. In case loss or damage under this policy is made payable (by assignment or otherwise) to a third party, then in case of loss or damage, the assured party, and not the assignee or third party, must make the requisite proofs of loss in conformity with the conditions of this policy, in like manner as if no assignment or collateral condition has been made; otherwise this policy shall be void."

" 18. The insurance under this policy shall cease at and from the time the property hereby insured shall be levied on or taken into possession or custody under any proceeding. in law or equity (whether there be any change in possession or not) and should there, during the life of this policy, an incumbrance fall or be executed upon the property insured and the assured shall neglect or fail to obtain the consent of the company thereto, then and in that case this policy shall be void."

The contract in question was between the appellant, an insurance company incorporated under the laws of the State of Pennsylvania, and one Joseph W. Gorrell, who on the 12th day of March, 1894, had executed to the appellee in this case, Frederick W. Baker, a mortgage upon his farm situated in Harford County, this State, to secure the payment of the sum of $2,500 owing from the said Gorrell to the appellee and had covenanted therein to insure, up to their insurable value, and keep insured, during the continuance of the said mortgage the improvements on the mortgaged land, "and to cause the policy or policies issued therefor to be so framed or endorsed as in case of fire to inure to the benefit of the mortgagee, his heirs or assigns, to the extent of his or their lien or claim " thereunder.

Among other buildings on the farm the dwelling house was insured to the amount of $500. On the 8th of August, 1900, this dwelling house was totally destroyed by fire. The appellee made a claim upon the appellant to be paid the loss under the policy of insurance which had been issued by it to Gorrell

as has been stated.   Failing to induce the appellant to make payment of the loss as demanded, the appellee on the 19th day of November, 1900, filed in the Court below his bill of complaint in which he alleged the facts already stated, and that the mortgage indebtedness due him from the mortgagor, which was provided to be paid in five years from the date of his said mortgage, was overdue and unpaid ; that the mortgagor, Gorrell, had on the 13th day of August, 1894, taken out a policy of insurance from the appellant company for the sum of $1,305 numbered 7624 ; that in the distribution of insurance among the buildings upon the mortgaged premises the stone house thereon (being the dwelling house already mentioned) was insured at $500 ; that said policy was taken out for the term of three years and expired on the 13th day of August, 1897, when a new policy was issued to cover loss from fire upon the same property and similiar to the first for another period of three years making the time for the same to expire, the 13th day of August, 1900 ; that the consideration for issuing the policy was duly paid, that the policy so taken out " was made payable to the mortgagee and so endorsed, but was never delivered to " the complainant (appellee) as was agreed to be done in the mortgage ; that the appellee (complainant below) was the only mortgagee of the property mentioned in his mortgage ; that this policy had " been lost and neither the said Joseph W. Gorrell or Frederick W. Baker " were " able to find it or produce it," and therefore were " not able to prove the loss according to its terms and provisions " and had so notified the appellant (defendant below) ; that appellee stood ready " to indemnify the defendant (appellant) by bond or otherwise " from the loss in controversy " if the said insurance policy should be recovered "; that the appellee had duly notified the appellant company of the loss in question by letters of date August 9th and 25th, 1900, also by written statement on August 27th and on September 27th by sworn statement of his claim ; that he also notified the agents of appellant residing in Harford County through whom the insurance was negotiated for and effected upon the property

in question ; that this agent visited the premises injured by the fire on the day of the fire ; that he made out his claim as mortgagee and duly submitted it to the appellant ; that the mortgaged property is not sufficient to pay the mortgage debt and that Joseph W. Gorrell refused to claim or prove loss for the said insurance, he having no interest in the same.

The bill then prays that the appellant be required to answer under oath "and discover and set forth in detail the terms, conditions, clauses and covenants of the policy issued" on the 13th day of August, 1897, to Gorrell as charged in the bill, the amount of the same and to whom it was payable and that the amount of the policy be decreed to be paid to Baker. The appellant answered the bill admitting the issuing of the policy of insurance to Joseph W. Gorrell on the 13th of August, 1897, as charged in the bill and that the same was not delivered to the appellee, but avers it was delivered to Gorrell or to his agent ; and in answer to the prayer of discovery produced and filed with its answer a copy of the policy so issued which showed upon its face an entry as follows :

"*Pylesville, Md., Agency*, Aug. 23, 1897.

"Loss, if any, payable to mortgagee as interest may appear, according to conditions of Policy.

(Signed) D. L. Pyle & Son, Agents."

The answer avers that the appellant knew nothing of the loss of the policy, but that if the same was lost, if such fact had been made known to it by the assured, "it would, as is its invariable custom, have issued a duplicate policy to him or his agent." It then denies that there is any agreement or any privity of contract between the appellant and appellee under the contract of insurance in suit and then claims that if such agreement had existed the contract has been rendered null and void by the violation or non-observance of the conditions of the 6th, 14th and 18th clauses thereof.

There was little or no contradiction in the testimony offered in support of the allegatious of the bill. The questions arising thereon are as to the effect to be given to it as relates to the matters of defense set up by the appellant. The appel-

lant urges three grounds of defense to recovery in the suit. 1st. That Joseph W. Gorrell was a necessary party to the suit and the appellee's bill should have been dismissed for the want of necessary parties.   2nd. There were no sufficient preliminary proofs of loss furnished.   3rd. The policy was void at the time of the loss insured against because of the violation of the conditions of the 18th clause thereof.

· In proceeding to consider these propositions we will take them in inverse order.   The appellant's claim of a violation of the 18th clause of the policy is based on the following facts.   Before the occurrence of the loss which is the subject of this controversy—on the 16th day of August, 1899—the appellee began in the Circuit Court for Harford County, proceedings to foreclose the mortgage upon the insured premises which contained the covenant by virtue of which the loss had been made payable to the appellee.   An interlocutory decree had been entered against the mortgagor, whereupon he filed in the cause a petition alleging that there had been between him and the appellee certain negotiations going on for an amicable settlement of the matters in suit between them and asking for the rescinding of the interlocutory decree and to be allowed to file an answer.   This petition the Court granted and the mortgagor thereafter filed an answer.   The proceedings were thus delayed until the 24th day of March, 1900, when the appellee filed in the cause a petition in which, after setting forth the proceedings already had therein, he alleged reasons why the proceedings were necessarily delayed ; and then alleged that the mortgaged premises—a farm and necessary buildings—were idle and in danger of loss and injury from being unoccupied ; that the season for planting and beginning farming operations was then on and the farm ought to be rented for the then coming season ; that the farm was not sufficient to pay the mortgage debt ; that there was a tenant, one James B. Stewart, who was willing to undertake the farming of the same ; and that "it would be for the benefit of all concerned that the said Stewart be authorized to undertake the farming of said place during the coming season."   The

petition then prayed the appointment of a receiver "to take charge of. the said farm and make such terms with the said James B. Stewart as may be wise and expedient to farm the same during the coming season under the further order and direction" of the Court. Upon this petition the Court passed an order naming the appellee here as receiver, "to take charge of said farm and make whatever arrangements and terms might be necessary with the said James B. Stewart or any other tenant for the farming of the property mentioned in the petition for the coming season " It does not appear that this petition or the action of the Court thereon was contested by the mortgagor. It does appear that James B. Stewart was at the time the petition was filed, and had before then, been occupying the farm as tenant and was becoming dissatisfied as to the uncertainty of his being able to hold the property. It further appears that the receiver was required to, and did, give bond "for the faithful performance of his duty."

We do not find that this Court has heretofore been called upon to construe a provision in. a policy of fire insurance in the precise terms of the one we are here considering ; nor have we been referred to any case in which such a one has been the subject of judicial construction. The object of inserting conditions of this character in contracts of fire insurance is to protect the insurer against an absence or cessation of interest, upon the part of the insured in, or loss of control over, the subject of insurance, and consequently of motive or opportunity to care for and preserve from injury the property insured. Construing this 18th clause in the policy, here in suit, in the light of this reason it would seem that what is meant by the terms, " levied on, or taken into possession, or custody," employed therein, is some essential or appropriate step or part of a proceeding which if perfected will take from the insured, or affect him in, his title and possession. The terms used do not mean such a taking into custody as resulted from the appointment of a receiver for the property insured in this case under the circumstances set out. The appointment of a receiver here was in the nature of an accident growing out of

the particular situation and could not have, and was not intended to have, any ultimate effect upon title or possession. It was an expedient device to meet an exigency, as shown by the proceedings to procure the appointment and the facts pertaining to the situation of the property in question at the time. The intention and the effect of the appointment was merely to make temporary provision for the care and protection of the property in the interest of all concerned. We can not agree therefore with the contention of the appellant as to the effect of this 18th clause of the policy of insurance upon the right of the appellee to recover under the proof in that connection. The case of *Merchants Ins. Co.* v. *Brown, &c.,* 77 Md. 79, much relied upon by appellant's counsel is not inconsistent with this view. In that case what transpired, and what was held to avoid the policy sued on, was within the very terms of a condition of the policy and also clearly within its reason.

Coming now to the defense made by the appellant based on the 6th and 14th clauses of the policy we find from the testimony that the preliminary proofs of loss furnished by the appellee were not so furnished in formal compliance with the provisions of the policy referred to. It is insisted that this non-compliance has been waived or excused by the conduct of the appellant since notice to it of the occurrence of the loss in controversy here. Before proceeding to examine the evidence upon this branch of the case let us see what effect, if any, is to be given in this connection, to the 9th clause of the policy, which has been quoted with others, and to which we find reference made by the appellant's agent, as sufficient to contradict waiver, in a final refusal to pay the claim of the appellee. Clauses of this character were construed in the cases of *Franklin Fire Ins. Co.* v. *Chicago Ice Co.,* 36 Md. 102, and of *Rokes* v. *Amazon Ins. Co.,* 51 Md. 512. In the first of these cases the language of the condition construed was as follows, "nothing but a distinct, specific agreement, clearly expressed, and endorsed on this policy, shall operate as a waiver of any printed or written condition, warranty or restriction therein." After quoting from a decision of the Su-

preme Court of Massachusetts in the case of *Blake* v. *Exchange Mut. Ins. Co.*, 12 Gray, 265, what was there said in reference to "provisions as to form of notice and proofs of loss," the Court said, in reference to the language just quoted: "According to our construction of the last clause in the eighth condition of the policy, it refers to those conditions and provisions of the policy which enter into and form a part of the contract of insurance and are essential to make it a binding contract between the parties ; and which are properly designated as conditions ; and that it has no reference to those stipulations which are to be performed after a loss has occurred, such as giving notice and furnishing proofs of loss. These are not conditions inherent in the contract itself, but stipulations to be performed by the assured as preliminary to his right of action on the contract, or to the liability of the company to pay the loss." This ruling was affirmed and applied in the case in 51 Md. *supra*, in which the language of the condition the Court was dealing with was, "no waiver or modification of any of the terms or conditions of this policy shall be made in any event." These rulings are distinct to the effect that clauses in a policy of insurance of the description of the 9th clause of the policy in question cannot be invoked to conclude a question of waiver of proofs of loss where such waiver is not evidenced as therein prescribed. That the insurer may be held to have waived or to be estopped from setting up as a defense a strict compliance with provisions in the policy prescribing time and mode for the furnishing by the assured of proofs of loss, and what these shall contain, is established by authority everywhere. Our own Court is in entire accord with this current of authority. In the case last referred to, *Rokes* v. *Amazon Ins. Co.*, 51 Md. *supra*, it was said, "preliminary proofs are required for the benefit solely of the insurer, in order that he may ascertain the nature, extent and character of the loss ; and the condition in the policy in respect thereof being inserted for his benefit, there is no reason why he may not waive or extend the time within which such proofs are to be furnished. Nor is it

necessary to prove an express agreement to waive. On the contrary, it may be inferred from the acts and conduct of the insurer inconsistent with an intention to insist upon the strict performance of the condition." This was approved and repeated in the late case in this Court of *Hartford Fire Ins. Co. v. Keating*, 86 Md. 130, where it was again said, referring to this question of waiver of proofs of loss : " But all the authorities agree that this condition may be waived, either expressly or by acts and conduct of the insurer himself, or of his agent, having real or apparent authority ; and the waiver may be inferred from such acts and conduct as are inconsistent with an intention to insist upon a strict performance." It is not necessary to multiply references. Cases already cited from and references therein contained are sufficient.

We may now examine the facts in evidence relied upon by the appellee in this case to show waiver. It may be premised that the appellant did not need from the appellee proofs or information from which to "ascertain the nature, extent, and character of the loss." It appears from the proof in the case that the appellant was fully informed as to this through its authorized agents, immediately after the occurrence of the fire ; and that this was known to the appellee, through his authorized agents. The furnishing of proofs of loss was known to both parties to be under the circumstances a purely formal and technical requisite. We note this because, such being the case, the appellee, in reliance upon a sense of fair dealing which he had a right to expect would influence the conduct of the appellant's authorities ; and upon the just expectation that in adjusting contractual rights between himself and them substance would be respected rather than form, could more easily be lulled into a false security. Therefore the Court, especially a Court of equity, is justified in exacting of the appellant all the promptness and candor which the circumstances of the case called for, in the interest of justice, in making known to the appellee, when he was presenting his claim, its insistence upon the observance of strictly formal and technical requisites, that the appellee may not too readily fall a

victim to any loose notions exhibited by the agents of the appellant as to the substance of its obligation. The first thing done on behalf of the appellee after the fire occurred was the sending of a letter to D. L. Pyle & Son on the day the house burned, by the attorney of the appellee which letter referred to the fire, asked for a conference on the subject and warned against paying any of the insurance to any one until this conference could be had as it was claimed for the mortgagee (appellee).' D. L. Pyle & Son were the agents of the appellant, having charge of its business in Harford County and as has been seen they, as such agents, had written into the policy "loss, if any, payable to mortgagee," &c., and signed for the company and that the company had recognized and adopted this act. They therefore appeared to be clothed with authority from the company to act for it in relation to the claim of the mortgagee. These agents in response to the letter addressed to them wrote on the next day, August 9th, to appellee's attorney and said, "we have reported loss to company by telegraph and will hear from them soon. That is all we can do at present. The claim of mortgagee is of course preferred to that of assured and will of course get full opportunity to get any money paid if he wishes it, and without any further action on your part." On the 14th of August appellee's attorney wrote to the company at York, Penna., notifying the officials not to pay over any money to Joseph W. Gorrell "or any person for him on account of a policy issued to him in the sum of $900 by D. L. Pyle & Son for a property in Harford County;" and that a fire occurred on the property on the 8th of August; and that the appellee as mortgagee claimed the $900. There appears a decrepancy between the amount named in this letter and the amount named in the policy but that the identity of the policy referred to was understood at the office of the company appears from a letter written by the general agent of the company of the same date as follows:

"Aug. 14th, 1900.

" *The Farmers' Fire Insurance Co.*, York, Penna., Joseph W. Gorrell, Esq., Churchville, Md.

" DEAR SIR : We have notice of your loss to dwelling and will try and meet you on the premises Thursday morning if possible to examine the same.    Please be there.    Yours truly, (signed) JOHN T. WILLIAMS, Genl. Agt."

To the letter of the appellee's attorney of the 14th of August the appellant company made no reply.    On the 25th of August the appellee's attorney went to the company's office in York, Penna., and upon making known his business was referred to Mr. Williams, the general agent with whom he had an interview of which the attorney (Mr. Lee) gives this account in his testimony.    " I told Mr. Williams of this fire. I told him that I had written him and had received no answer. I told him that Mr. Baker had a mortgage on the property and that the policy was lost and I was there demanding the payment of the money.    He passed the time of day and the weather and spoke of his agents in Harford County, and what satisfactory men they were, and told me he would just refer me to the policy, and I said, Mr. Williams, I cannot get the policy because the policy is lost and it is impossible.    He also stated to me that I must make my claim in six months. He gave me that much information about the policy but he declined to do anything else.    My visit was most unsatisfactory and I left and I remember I was very much disappointed." Mr. Williams who was examined as a witness for the appellant admitted this account of the interview to be substantially correct.

On August 27th Mr. Lee, attorney for appellee, sent to the appellant company, a statement of loss accompanying it with a letter calling attention to the claim and saying, " if it is not in proper form advise me and I will endeavor to make it so. You have never answered my letter of 14th inst. which your Mr. Williams admitted receiving.    Please answer this."    The statement accompanying the letter gave date of the mortgage from Gorrell to appellee, the amount of it ; said that no part of it had been paid though time limited for payment had expired ;  that the mortgage covenanted for insurance for the benefit of the mortgagee ; and that the mortgagee (appellee),

stood " ready to prove his mortgage and mortgage claim in any·way the company may desire. " It then stated the taking out of the policy of August 13th, 1894, and numbered 7624, that it was made payable to appellee, expired in August, 1897, and was renewed for another term of three years to August 13th, 1900, that $500 was on the stone house which was destroyed by fire on the 8th of August, 1900, that the house was worth more than $500, that the loss of the house reduced the security of the appellee's loan, that the property was not worth the mortgage claim against it, and that the claimant (appellee) was the only mortgagee. To this the attorney (Mr. Lee) received reply dated Aug. 28th, 1900, as follows:

·" Your favor of the 27th inst. in reference to claim of Frederick W. Baker as mortgagee, to insurance money under a certain policy number 7624, said to have been issued to Jos. W. Gorrell by Farmers' Fire Insurance Company of York, Pa., received.

·"In reply would say that this company has no such numbered policy in force, and if it had, it would be obligatory (under the terms and conditions of their policy) that the assured party and not the mortgagee should make the requisite proofs of loss, consequently we cannot receive your papers as valid proofs of loss, as under the terms and conditions of the policy, to which you are referred for information in making claims for loss, but if statements were sworn to, might show your client to be a mortgagee of assured.

"Your papers are held subject to your order.

(Signed) FARMERS' FIRE INSURANCE CO.,

"Per JOHN T. WILLIAMS, Gen'l Agt."

To·this letter Mr. Lee, the attorney, under date of August 30th, 1900, replied as follows:

"*Farmers' Fire Insurance Co., York, Pa.*

"SIRS : Yours of the 28th received. It will be impossible for my client, Mr. Baker, to make out proof of loss according to the terms of your policy because as I told your Mr. Williams when in York at your office, Sat., August 25 last. The policy is not in our possession, never having been deliv-

ered to me by the mortgagor, though demanded by us of Mr. Joseph W. Gorrell. Please return the papers sent and I will have Mr. Baker make affidavit to them and return them again to you."

At the date of this letter there remained at least a week of the thirty days, the time prescribed by the policy within which proofs of loss were to be furnished. There was no answer to it from the company until September 11th, when Williams, the general agent, wrote as follows :

"*John L. G. Lee, Esq.*,

       Attorney at Law, Baltimore, Md.

"DEAR SIR : In accordance with your request we return you papers in the case of *Frederick W. Baker, Mortgagee,* v. *Jos. W. Gorrell.* My absence from the city until this A. M. has prevented an earlier compliance."

· Mr. Lee procured the statement returned with this letter to be sworn to on the 27th of September, 1900, and forwarded it with the following letter of the same date : "Enclosed you will find the claim of Mr. Frederick W. Baker for loss as mortgagee of the property in Harford County, Maryland. If this is not properly proven please advise me, as you know the policy is not in my possession nor can I procure it."

This was not replied to until October 17th, when Williams, the general agent, wrote as follows to Mr. Lee : "Herewith please find the answer to your papers received Sept. 29th, in which the Farmers' Fire Insurance Company, under the terms and conditions of this policy, and the facts in the case, are compelled to deny the legality of the claim as made under the policy contract ;" and then saying, "while the company reserved all rights under the policy contract, they might not be unwilling to consider a compromise if on examination you should feel so disposed."

The agent, Williams, followed this letter by another to Mr. Lee, of October 18th, in which he makes a lengthy statement of reasons why the company was not liable to the appellee · for the loss, and making reference to the 6th, 9th, 14th and 18th clauses of the policy as those under which he claimed

.the company's non-liability to the appellee ; and then for the first time encloses, as he. states in his letter, "a copy of the printed form of policy issued to Joseph W. Gorrell."

The facts which have been recited as appearing in evidence in this case evince upon the part of the officials at the home office of the appellant an utter want of candor and fairness in treating the claim of the appellee. They were silent when they ought to have spoken and when they spoke it was either to evade what in fairness they should have disclosed or to positively mislead. The agents of the appellant in Harford County who negotiated the insurance upon the property in question and entered the loss as payable to the appellee having seen the property after the fire and knowing the extent and character of the loss and having reported the same to the company, acting with apparent authority, told the attorneys of the appellee that he would have "full opportunity to get any money paid" if he wished it, "and without further action on" their part. This was a recognition of the claim of the appellee after a view of the premises upon which the. fire occurred and as full a knowledge of the loss as could be obtained from any source. When the attorney of the appellee followed this up with a notice to the home office of the company of the appellee's claim no notice was taken of it. When the same attorney appeared there in person in quest of information and to put the claim in due form before the company, his proper inquiries for information were evaded upon unreasonable and frivolous pretexts. He was referred to the policy for information, when it was known the policy was lost, without a suggestion that a copy might be had, although the appellant's answer alleged that in case of the loss of a policy it was the invariable custom of the company to supply a duplicate when the fact of the loss was made known to it. He was finally told that he had six months within which to make his claim.

This statement, made without qualification; to a person known to be uninformed as to the particular provisions and conditions of the policy and who was seeking information as

to what was to be done to secure the claim he presented, was calculated to mislead.    It was, when made under these circumstances, inconsistent with an intention to require anything more to be done than that the claim should be made in six months.    When appellee's attorney wrote on the 27th of August, sending statement of mortgagee's claim and asking, if it was not in proper form, to be so advised and he would endeavor to make it so, the reply of the company's agent, saying, after quibbling about the number of the policy, that the papers could not be received as valid proofs of loss, &c., that the assured party and not the mortgagee should make the proofs, did not make it appear whether he was referring to a distinct requirement of the policy or was only giving his own construction as to what the policy required.    The attorney was again referred to the policy for information as to " making claims for losses " when this agent knew that he did not have the policy ; and did not send, nor suggest the getting of, a copy of the policy, nor a copy even of the particular provisions that were to be complied with.    Still temporizing, the agent concluded with a suggestion that if the statements were sworn to it might show the client to be a mortgagee of assured. When Mr. Lee replied to this that it would be impossible for his client (the appellee) to make out proof of loss according to the terms of the policy because of not having the policy and asking that the papers be returned to him that his client might make affidavit to them the papers were retained at the company's office until after the expiration of the thirty days for making proofs of loss according to the policy.    After this the company's agent for the first time indicated an intention to dispute the appellee's claim upon the several grounds, all of them purely formal and technical, which have been set out ; and for the first time sent to the appellee's attorney full information of the provisions of the policy of insurance affecting appellee's claim and also " a copy of the printed form of policy issued to Joseph W. Gorrell."

The evidence shows that the course of the officials at the home office of the appellant company in dealing with the claim

of the appellee was temporizing and misleading throughout until it was supposed by them that the claim no longer had validity by reason of the absence of such proofs of loss as the policy by its strict terms provided for.   This course of dealing is shown by the evidence in the case to be so strongly suggestive of sinister purpose that it ought to find no favor in a Court of equity ; and upon this evidence we think the appellant ought to be held as estopped to set up the defense based upon the absence of preliminary proofs of loss furnished in strict accordance with the terms of the policy.   In coming to our conclusion we have not overlooked the case of *Spring Garden Ins. Co.* v. *Evans*, 9 Md. 1.   In that case, however, when the agent of the party making claim of the insurer was referred to the policy for information as to the requisites for proofs of loss it does not appear that the party making claim did not have the policy to refer to and that with knowledge of his not having it information was refused him.   Nor in view of the letter of the agent of the appellant in this case of the date of August 28th, 1900, have we overlooked the cases of *Edwards* v. *Balto. Fire Ins. Co.*, 3 Gill, 176, and *Citizens Fire Ins. Co.* v. *Doll*, 35 Md. 89.   In those cases the officials of the insurance companies acted in giving notice of defects in the preliminary proofs upon apparently substantial grounds and with all reasonable promptness and candor ; and it does not appear in either case that the party making claim was not in possession of the policy of insurance and therefore of the means of being informed of what was required in the preliminary proofs.

As to the contention of the appellant that the bill of complaint ought to have been dismissed for want of proper parties because Joseph W. Gorrell, the assured party in the policy of insurance, was not made a party to the cause.   Assuming that he might, with propriety have been made a party, we find nothing in the pleadings or proofs to show that he is an indispensable party which alone could justify a dismissal of the bill especially at this point in the litigation.   *Jewett et al.* v. *Tucker et al.*, 139 Mass. 566.   The appellant in its answer

avers "that the name of the complainant in this cause nowhere occurs in the policy issued  *  *  to Joseph W. Gorrell, and that there is not now and never has been any privity of contract between it" and the complainant.    This does not raise the question of want of parties.    It merely denies the right of the complainant to maintain the suit.    Such right on the part of the complainant results from the adjudications of this Court in the cases of *National Fire Ins. Co.* v. *Crane*, 16 Md. 260, and *Hanover Fire Ins. Co.* v. *Brown*, 77 Md. 64, (see page 76.)   It is true that it appears in those cases, as it does not appear in this, that the entries upon the policies of "loss if any payable," &c., was simultaneous with the issuance of the policies and that the names of the payees appeared in the entries.    But here it is made perfectly manifest from the proofs in the cause that the policy in this case was procured to be issued by the assured and to be entered as payable to "the mortgagee" in pursuance of his covenant to that effect in the mortgage which he executed to the appellee, and set out in the proceedings; and that "the mortgagee" intended was the appellee.    And with such proof the fact that the entry in question was made a few days after the date of the policy, in connection with the fact, also in proof, that it had the sanction of the appellant company, and that the mortgagee was not specifically named must be regarded in a Court of equity as no sufficient ground for denying to the intended beneficiary of the insurance contract a right to enforce the same.    The decree of the Court below will be affirmed.

*Decree affirmed with costs to the appellee.*

(Decided January 30th, 1902.)