KENNEDY, ET AL. v. FOLEY, RECEIVER FOR
SENTINEL PUBLISHING COMPANY,
INC., ET AL.

[No. 313, September Term, 1965.]

40

*Decided September 14, 1966.*

*Motion for rehearing and reconsideration filed by the Receiver September 28, 1966; rehearing denied and findings modified as to costs November 7, 1966.*

*Motion for rehearing filed by Cuneo October 11, 1966, denied November 7, 1966.*

The cause was argued before Prescott, C. J., and Horney, Marbury, Oppenheimer and McWilliams, JJ.

*Seymour J. Spelman,* with whom were *Green, Babcock &* *Dukes* and *Charles A. Dukes, Jr.,* on the brief, for appellants.

*John R. Foley,* with whom was *Richard L. Walsh* on the brief, for Ernest Cuneo, one of appellees; *John C. Tracey* for Receiver, other appellee.

McWilliams, J., delivered the opinion of the Court.

The purpose of this litigation is to lay hands on money held by a receiver. Cuneo (appellee) says his claim to it is buttressed by a chattel mortgage. Appellants (95 workers claiming 4 days' wages) say that Cuneo's mortgage is no good as to them. Of the myriad facts we shall relate only those pertinent to the narrow issue presented and, unless otherwise indicated, they are not in dispute.

For a number of years prior to 1957 Cyril M. Campbell (trading as Campbell Printing Company) conducted a printing business in Rockville. During at least a part of the same period Columbus Publishing Company, a Delaware corporation (Cuneo's enterprise), printed its weekly, "The Maryland News," in Silver Spring. A competitor, The Sentinel Publishing Company, Inc., published the "Montgomery County Sentinel." Since it is unnecessary for us to recount all of the events which led up to the coalescence of these three companies, we shall begin, as an earlier ornnament [2] of the bar might have put it, *in medias res.*

For some months before 7 June 1957 Campbell [3] was a wholly owned subsidiary of Columbus but the chattels, Cuneo's lien upon which is disputed, were owned by Campbell. On 7 June 1957 Cyril Campbell bought from Cuneo (and others [4]) all of the stock of Columbus. The deferred purchase price was secured by the deposit of all of the Columbus stock and books of account with a trustee. The agreement of sale also required

---

2. Marcus Tullius Cicero, 106-43 B.C.

3. Cyril Campbell incorporated his business a year or two earlier. "Campbell" used without the name Cyril, denotes the corporation.

4. Drew Pearson and Joseph E. Keller, neither of whom are involved in this litigation.

Campbell to give to Columbus a chattel mortgage (to be deposited also with the trustee) on all of its chattels. For reasons undisclosed this was never done. Several months later, however, Columbus gave Cuneo (and the others) a chattel mortgage *on all of Campbell's presses and appurtenant machinery.* The mortgage (recorded 23 September 1957) states that Columbus is "indebted to * * * [Pearson, Keller and Cuneo] in the sum of $80,000" which was what Cyril Campbell agreed to pay for the Columbus stock.

Cyril Campbell died 11 March 1963. Sometime thereafter Charles A. Froman became the sole stockholder, president and chairman of the boards of directors of all three companies. He was also a creditor of each company. In these several capacities he asked the Circuit Court for Montgomery County, on 17 February 1964, to appoint a receiver to liquidate the three companies. James K. Foley, Esq., the nominal appellee, was appointed receiver 26 February 1964. At that time Cuneo's claim had been reduced to $19,600.

On 6 January 1965 Foley filed a petition asking the court to determine the validity (or priority) of the claims of a number of chattel mortgages against the assets in his hands. In respect of Cuneo's mortgage he alleged that Cuneo, as vice president of Columbus, had authorized "the transfer of all assets covered under this chattel mortgage to * * * [Campbell] without reservation of rights under the chattel mortgage, [and that] therefore, * * * [the] lien is lost." Cuneo's answer, which restates but does not dispute any essential facts, asserts "a valid and existing lien on said equipment which was the property of Cyril M. Campbell, sole stockholder of Columbus and sole owner of Campbell * * *, and which Cyril M. Campbell was obligated under said agreement of June * * * [7] 1957 to mortgage to secure the unpaid balance of its notes to Ernest Cuneo."

That appellants were the employees of Campbell (to the exclusion of Columbus and Sentinel), that the chattels in question were owned exclusively by Campbell at the time of the execution and recording of the chattel mortgage and that appellants did not have actual notice of the existence of the chattel mortgage are all matters which are not in dispute. Nor is there any basis for claiming that the description of the chattels, as

it appears in the mortgage, would suggest to anyone acquiring actual notice thereof an inquiry which, if pursued, would lead to the identification of the chattels as the property of Campbell.

Cuneo contends here, as he did below, that he acquired, by virtue of the 7 June 1957 agreement, an enforceable equitable lien on the chattels of Campbell, that the receiver is bound by this equitable lien, and that his lien is enforceable even against the appellants as wage claimants. Appellants, on the other hand, contend Cuneo's mortgage is invalid as against them because of the priority afforded them by Code, Art. 47, § 15. They contend also that because Columbus rather than Campbell is the mortgagor (Campbell is not mentioned) the mortgage is unrecorded as to them.

The trial judge (Shook, J.) held Cuneo's mortgage to be "valid and [that it] secures [against the assets of Columbus *and Campbell*] the claim of Cuneo for $19,600 plus interest." Judge Shook did not state the grounds of her decision nor does it appear that a motion requiring her to do so was filed by any of the parties. Maryland Rule 18 c. That we must reverse the trial court without knowing the reasons for her decision is unfortunate and we deem it appropriate to repeat what we said in *Houston v. Lloyd's*, 241 Md. 10, 13-14, 215 A. 2d 192, 194 (1965) :

> "We have observed on a number of occasions [citing cases] that it might be helpful for us to know how or why the trial court reached his (or her) decision. Counsel ought not to be timid in making use of this rule nor should trial judges be annoyed with counsel for doing so, for, it will be recalled, the rule [18 c] itself is a relaxation of the former practice which required the trial judges [except in Baltimore City and Prince George's County], in equity cases, to file an opinion in *every* case in which there was oral or written argument. Code, Art. 16, § 209 (1951). We are satisfied it would be desirable, in most cases, for such a motion to be filed whenever it becomes clear to counsel that an appeal to this Court will be perfected."

44

Since we think it is controlling, we have set forth an abridged version of § 15 of Art. 47 (1957, Repl. Vol. 1965):

"Whenever any * * * body corporate * * * shall have * * * its property * * * taken possession of by a *receiver* under a decree of a court of equity, in the distribution of the property * * * of such body corporate, all the money due and owing from such * * * body corporate for wages * * * to * * * employees contracted not more than three months anterior to the * * * appointment of [said] receiver, *shall first be paid in full out of such property* * * * after payment of the proper and legitimate costs, expenses and commissions, *and shall be preferred to all claims against the property* * * * of such * * * body corporate, except the *lien* claims of such persons as shall hold liens upon such property * * * *recorded* at least three months prior to such * * * decree." (Emphasis supplied.)

In *Casualty Ins. Company's Case* (sometimes cited as *Boston & A. R. Co. v. Mercantile Trust & Deposit Co.*), 82 Md. 535, 567-568, 34 Atl. 778, 782-783 (1896), Chief Judge McSherry, for the Court, said:

"The object of the statute [Code, Art. 47, § 15] was to provide for the payment of the wages and salaries due a certain class of persons to whom such wages and salaries were deemed always necessary for their support and maintenance. * * * [It] was designed to create a preference in behalf of certain creditors in the distribution of an insolvent's assets and to that extent it disturbs and destroys the equality amongst all the creditors, which equality it was the obvious, if not declared, policy of the insolvent system to promote and preserve."

Judge McSherry discussed § 15 in greater detail in *Roberts v. Edie,* 85 Md. 181, 36 Atl. 820 (1897). In *Hess v. Jewell,* 85 Md. 235, 238, 36 Atl. 758, 759 (1897), Judge Roberts, after quoting Judge McSherry, had this to say:

"The appellants insist that notwithstanding the Act of 1888, ch. 383 [§ 15 of Art. 47], they are entitled to priority in the payment of their claim for rent, and urge that although the Act in question was passed in 1888, yet no attempt has ever been made to place such a construction upon its provisions as that contended for by said employees, who are appellees here. The mere fact, if true, that the Act has remained dormant for a number of years detracts nothing from its true meaning and effect. The Act has, however, been before this Court upon three different occasions, in 72 Md. 24; 80 Md. 139; 82 Md. 565, and the same construction as to the priority of the claims for wages of employees in the distribution of the assets of insolvents' estates, has been adhered to." *Id.* at 238.

In 1896, § 15 was amended (Chap. 184, Acts of 1896) to include salesmen. The effect of this amendment was discussed by Judge Burke in *Perkins v. Barr,* 126 Md. 91, 94 Atl. 533 (1915) wherein the earlier opinions of Judge McSherry were quoted with approval. See also *G. E. Frisco v. Aetna Insur. Co.,* 235 Md. 472, 477, 201 A. 2d 781 (1964).

In his attempt to finesse the statute (§ 15 of Art. 47) Cuneo contends, ingeniously if not persuasively, that our holding in *Plaza Corp. v. Alban,* 219 Md. 570, 151 A. 2d 170 (1959) that the 1949 amendment to Code, Art. 21, § 41 [4] withdrew the protection previously given to subsequent general

---

4. Sec. 41 of Art. 21 is as follows:

"No personal property, of any description whatever, whereof the vendor, mortgagor, or donor shall remain in possession, shall pass, alter or change, or any property therein be transferred to any purchaser, mortgagee or donee, *as against subsequent purchasers, mortgagees, incumbrancers, landlords with liens, pledgees, receivers, and creditors who acquired a lien by judicial proceedings on such personal property,* unless by bill of sale or mortgage acknowledged and recorded as herein provided; but nothing herein shall be construed to extend to any sale or gift, where the same is accompanied by delivery, nor to invalidate such transfer as between the parties thereto." (Italicized portion added by 1949 amendment.) § 41 of Art. 21 was repealed by Acts of 1963, ch. 538, effective 1 February 1964 (the Uniform Commercial Code).

creditors and limited it to a small specified group consisting of subsequent purchasers, pledgees, receivers and lienors, demotes the appellants, in some undisclosed manner, from their preferred status of wage claimants to "subsequent general creditors." Therefore, he concludes, the Legislature must have intended also to delete, sub silentio, the word "recorded" from § 15 of Art. 47, thereby subordinating wage claims to claims secured by unrecorded liens. Chief Judge Prescott, who spoke for the Court in *Plaza,* made a careful, comprehensive and lucid analysis of the impact of the 1949 amendment on the rights of the several categories of creditors. Nowhere does he mention, however (nor was he in that case obliged, in any respect, to deal with), the rights of wage claimants as set forth in § 15 of Art. 47. Unlike subsequent general creditors, the Legislature has been especially solicitous of the welfare of wage earners. *Casualty Ins. Company's Case, supra.* There is nothing in Judge Prescott's review of the legislative history of § 41 of Art. 21 which would suggest that the 1949 amendment was intended, by indirection, to effect any diminution of the prerogatives enjoyed by wage earners under § 15 of Art. 47. Moreover, we do not think the maintenance of the priority afforded wage claimants by § 15 of Art. 47 is in any respect incompatible with our holding in *Plaza.*

Cuneo also argues, with more élan than logic, that since the appellants appear in this case solely through the receiver they are, ipso facto, subsequent general creditors whose previous protection has been withdrawn by the 1949 amendment and that, as a result, their claims are subordinate to Cuneo's unrecorded "equitable" lien. It will be observed that in the "small, specified group" to whom protection was given by the 1949 amendment, *receivers* are, in fact, included. They certainly were not included to protect subsequent purchasers, pledgees or lienors, since they also are specifically placed in the protected group. It has been suggested that the inclusion of receivers is meaningless unless the Legislature intended to withdraw the protection previously afforded subsequent general creditors only from those subsequent general creditors whose claims will not be paid, in whole or in part, by a receiver. But whether the Legislature intended, thereby, to create two classes of subse-

quent general creditors is a question we need not, and do not, decide because it is quite clear that appellants do not appear in this case solely through the receiver. They are parties. The issue litigated in the trial court was between them on one side and Cuneo on the other. The posture of the receiver is merely that of stakeholder. The decision of the trial judge directly affected their interests and no one has questioned their standing to be appellants in this Court.

Many pages of the briefs and much time in argument were devoted to the question whether the recorded chattel mortgage from Columbus to Cuneo constitutes an equitable lien on the chattels of Campbell. Whatever its status may be in respect of others, it cannot prevail against the appellants. The statute (§ 15 of Art. 47) requires that their "wages * * * shall first be paid in full * * * and shall be preferred to all claims * * * except the lien claims" recorded at least three months prior to the decree. It is well settled that the recording of a mortgage of personal property made by one who is not the owner of the property is not constructive notice to one dealing with the owner. 14 C.J.S., *Chattel Mortgages,* § 164; 15 Am. Jur. 2d, *Chattel Mortgages,* § 98.

The order of the trial court will be reversed and the case will be remanded for further proceedings conformable to the views expressed in this opinion.

> *Order Reversed. Case remanded for further proceedings conformable to the views expressed in this opinion. Costs on this appeal to be paid by the appellee, Ernest Cuneo, except that a portion of the cost of printing appellants' record extract, in the amount of $472.68 shall be paid by the appellants.*