## LEWIS *v.* GERMANTOWN INSURANCE COMPANY

[No. 398, September Term, 1967.]

*Decided December 4, 1968.*

The cause was argued before HAMMOND, C. J., and McWIL-LIAMS, FINAN, SINGLEY and SMITH, JJ.

*John H. Keane, Jr.,* with whom was *Edward P. Camus* on the brief, for appellant.

*William H. Clarke* for appellee.

McWilliams, J., delivered the opinion of the Court.

We sometimes wonder if the bar ever reflects upon the reasons why we have adopted and promulgated rules of practice and procedure. We wonder also how many practitioners pay any attention to what we have said about these rules. We refer, at the moment, to Maryland Rules 18 c[1] and 535[2] and the decisions[3] in which they have been discussed. Thus far, in en-

---

1. Rule 18 c, prior to 1 October 1968, was as follows:

"c. Memorandum of Grounds for Decision.

"The court shall upon motion of any party, made at any time prior to the expiration of the time for appeal, dictate to the court stenographer or reporter, or prepare and file with the clerk, a brief statement of the grounds for its decision, and the method of determining the damages, if any, awarded by the final judgment entered in an action tried by the court without a jury and in an action in equity; provided, however, that no such statement shall be required in an action tried *ex parte*."

As amended 23 September 1968, effective 1 October 1968, the rule now reads:

"Within fifteen days after entry of an appealable final judgment in a contested action tried upon the merits without a jury, the court shall dictate to the court stenographer or reporter, or prepare and file in the action, a brief statement of the grounds of its decision and the basis of determining the damages, if any."

Although the trial judge *must* now state the grounds of his decision within 15 days after judgment, as a practical matter counsel must expect that there may be occasions when this will be more honored in the breach than in the observance. The careful lawyer will see to it that the trial judge makes the grounds of his decision a matter of record.

2. "Motion to Dismiss ............................ Gen'l.

"In any action tried by the court without a jury at law or in equity, any party, without waiving his right to offer evidence in the event the motion is not granted, may move at the close of the evidence offered by an opponent for a dismissal on the ground that upon the facts and the law he has shown no right to relief. Unless the court otherwise specifies, such a dismissal operates as an adjudication upon the merits."

3. Rule 18 c:

*Mercier v. O'Neill Associates, Inc.,* 249 Md. 286, 239 A. 2d 564 (1968); *Williams v. Knapp,* 248 Md. 506, 237 A. 2d 450 (1968);

forcing the Rules, we have been reluctant to make use of our powers of remand and dismissal, more out of consideration for litigants than for members of the bar. Of late, it should be noted, we find ourselves becoming somewhat less considerate of the plight of litigants whose obligation to know and comply with the Rules, at least in theory, is no less than that of the attorneys they retain to represent them. However, as we shall see, Rules 18 c and 535 were not the only ones slighted by the parties.

In the case at bar the appellant (Lewis) sued appellee (Company) in the Circuit Court for Montgomery County. In his declaration he alleged, in addition to the "money paid" and "money received" common counts, that on 1 September 1964 he received a letter from Carey Winston Company of Washington, D. C. (Winston), which held a mortgage on his Silver Spring residence, inviting him to participate in an arrangement whereby the Company "would insure * * * [his] mortgage indebtedness in the event of his disability," that to evidence his agreement thereto he completed and returned to Winston the

---

*Manning-Shaw Realty Co. v. McConnell,* 244 Md. 579, 224 A. 2d 445 (1966); *Whitcomb v. Horman,* 244 Md. 431, 224 A. 2d 120 (1966); *Southwestern Mines, Inc. v. P. & J. Coal Co., Inc.,* 244 Md. 180, 223 A. 2d 162 (1966); *Reeves v. Howar,* 244 Md. 83, 222 A. 2d 697 (1966); *Kennedy v. Foley,* 244 Md. 39, 222 A. 2d 623 (1966); *Warmack v. Bradley Club, Inc.,* 242 Md. 394, 219 A. 2d 12 (1966); *Zetlin v. Scher,* 241 Md. 590, 217 A. 2d 266 (1966); *Houston v. Lloyd's Consumer Acceptance Corp.,* 241 Md. 10, 215 A. 2d 192 (1965); *Correlli Roofing Co., Inc. v. National Instrument Co., Inc.,* 240 Md. 627, 214 A. 2d 919 (1965); *Queen City Enterprises, Inc. v. Independent Theatres, Inc.,* 230 Md. 387, 187 A. 2d 459 (1963).

Rule 535:
*Shoreham Developers, Inc. v. Randolph Hills, Inc.,* 248 Md. 267, 235 A. 2d 735 (1967); *Price v. Levin,* 248 Md. 158, 235 A. 2d 547 (1967); *Little v. Woodall,* 244 Md. 620, 224 A. 2d 852 (1966); *Allen v. Steinberg,* 244 Md. 119, 223 A. 2d 240 (1966); *Southwestern Mines, Inc. v. P. & J. Coal Co., Inc.,* 244 Md. 180, 223 A. 2d 162 (1966); *Smith v. State Rds. Comm'n,* 240 Md. 525, 214 A. 2d 792 (1965); *Johns v. Johns,* 236 Md. 278, 203 A. 2d 704 (1964); *Silver v. Goldberger,* 231 Md. 1, 188 A. 2d 155 (1963); *C-E-I-R, Inc. v. Computer Dynamics Corp.,* 229 Md. 357, 183 A. 2d 374 (1962).

"qualification certificate" and that on 1 October 1964 he re-ceived a "Certificate of Insurance." [4] He paid the premiums, he

4. Pertinent excerpts from the Certificate are as follows:
"GERMANTOWN INSURANCE COMPANY
PHILADELPHIA, PENNSYLVANIA
(A Stock Company Hereinafter Called the Company)
CERTIFICATE OF INSURANCE—MORTGAGOR-
MORTGAGEE INSURANCE ONLY

"INSURED MORGAGOR'S:

| Age | Account Number | Certificate Number | Effective Date |
|-----|----------------|--------------------|--------------------|
| 7-1-15 | PMC 83198 | MMP-23-244 | October 1, 1964 |

Monthly Indemnity  Monthly Premium
     $ 188.00                   $ 6.65          MORTGAGEE:

Morris M. Lewis                      The Carey Winston Co.
200 Glenmont Colesville Road         1723 Conn. Ave., N.W.
Silver Spring, Maryland              Washington, D. C.

"This Certificate gives a general resume of coverage. All statements are subject to the exceptions, limitations, provisions and other terms of the Master Policy, which is available at the office of the Policyholder for inspection.
"The Company Hereby Certifies that, in consideration of the payment of the premium shown above, the person named above (herein called the Insured Mortgagor) is insured under a Group Mortgage Accident and Sickness Master Policy issued by the Company to the Mortgagee named above (herein called the Policyholder) against loss of time, suffered while this Certificate is in force, and due to accident or sickness as herein defined."
*  *  *
"A. TOTAL DISABILITY COMMENCING BEFORE AGE 61
"If the Insured Mortgagor, due to accident or sickness, becomes totally disabled prior to attaining 61 years of age and while insured hereunder, so that he is prevented by reason of said accident or sickness from engaging in each and every duty pertaining to his regular occupation, and is so disabled for a period of fifteen (15) consecutive days, the Company, beginning with the sixteenth (16th) day of such disability, periodically will pay indemnity at the rate of Monthly Indemnity shown in the Schedule of the Insured Mortgagor's Certificate for the period the Insured Mortgagor is so disabled, not to exceed twelve (12) months.

further alleged, until 4 February 1966 when he became totally disabled "as a result of heart failure." The Company, he concluded, despite proper and timely demands on his part, refused to make the promised payments. The Company filed a motion to

After the payment of Monthly Indemnity for twelve (12) months as aforesaid, the Company will continue the periodic payment of Monthly Indemnity so long as the Insured Mortgagor is totally and continuously disabled and prevented by reason of said accident or sickness from engaging in each and every duty of any occupation or employment for wage, gain or profit for which he is qualified by reason of education, training or experience, not to exceed 48 consecutive months. In any event, monthly indemnity payments shall cease after the repayment in full of the Insured Mortgagor's indebtedness to the Policyholder."

\* \* \*

"TERMINATION OF INDIVIDUAL INSURANCE

"The insurance of an Insured Mortgagor shall automatically terminate upon the date of the first of the following events to occur:

"a. the date the indebtedness is discharged, or transferred to another mortgagee;

"b. the next premium due date following the date of Termination of the Master Policy;

"c. the end of the period for which premium is paid if further premium payment is not made as agreed;

"d. the date on which the Insured Mortgagor's employment is terminated for the purpose of retirement. Retirement as used in this Certificate, means the date on which the Insured Mortgagor ceases to be gainfully employed full time for wage or profit.

"In the event an Insured Mortgagor's insurance terminates prior to the date for which premiums have been paid, the Company will refund pro-rata unearned portion of any premiums to the Policyholder for proper credit to the Insured Mortgagor. Termination shall be without prejudice to any claim arising while this Certificate was in force.

"PROVISIONS

"NOTICE OF CLAIM: Written notice of claim must be given to the Company within twenty (20) days after the occurrence of commencement of any loss covered by the Certificate, or as soon thereafter as is reasonably possible. Notice by or on behalf of the claimant or the beneficiary to the Company at its Home Office in Philadelphia, Penn-

dismiss "inasmuch as this [the Circuit Court for Montgomery County] is not the most convenient forum and because the Carey Winston Company is an indispensable party to the termination of the issues in this case and is not amenable to suit in Maryland." Lewis responded with a motion ne recipiatur.

At this point we call attention to infringements of Rule 828. There is no record extract. There is no appendix to the Company's brief. Neither the declaration nor the motion to dismiss is printed in either brief. The same is true in respect of the certificate of insurance, except for a single paragraph thereof printed in Lewis' brief.

On 21 December 1967 there was a hearing on the motion ne recipiatur and the motion to dismiss. A 28 December 1967 docket entry indicates the entry of a "judgment in favor of the defendant [the Company] for costs." What transpired at the hearing, or thereafter, we have no way of knowing as the trial judge gave no reasons for his action.

Since the motion to dismiss was inappropriate, the motion ne recipiatur (which should have been a motion to strike) ought to have been granted. The Company's objections to the declaration should have been raised either by demurrer as provided by Rule 345 or by a motion raising preliminary objections as provided by Rule 323 a (2) and (8). We repeat our discussion of the function of Rule 535 as it appears in *Smith v. State Roads Comm'n,* 240 Md. 525, 539-40, 214 A. 2d 792 (1965) :

> "This rule [Rule 535] was designed especially for non-jury situations and we have had occasion in the past to observe that a 'motion for a directed verdict' is not the proper motion. *M & R. Builders v. Michael,* 215 Md. 340, 138 A. 2d 350 (1958) ; *Eastern Contractors v. Zinkand,* 199 Md. 250, 86 A. 2d 492 (1952). Nor is it proper for the party making the

sylvania, or to an authorized agent of the Company with information sufficient to identify the Insured Mortgagor, shall be deemed notice to the Company."

\* \* \*

"PAYMENT OF CLAIMS: All indemnities will be payable to the Policyholder, for proper credit to the Insured Mortgagor's account."

motion to do so at the close of all of the evidence, as did the appellant here, rather than at the close of his opponent's evidence. The main purpose of the rule is to allow a party to test the legal sufficiency of his opponent's evidence before submitting evidence of his own. Should he prevail at this point he avoids the necessity of going further and as well the risk that his own evidence may supplement his opponent's evidence enough to provide the missing legal sufficiency. If he waits until the close of all of the evidence then the motion becomes a nugacity because all of the evidence is then before the trier of facts and the determination of its legal sufficiency becomes an inseparable and necessary part of his decision. In jury cases, where a different climate prevails, a motion for a directed verdict offered at the close of all of the evidence gives the trial judge an opportunity to make a quantitative evaluation of the evidence, not to inform any decision to be made by him, but only to assess the propriety of allowing the jury to make findings of fact. The jury does the deciding; the judge simply sees to it that they have enough material to work with."

The nub of the Company's case seems to be that because Winston is an indispensable party Lewis should have filed his suit in the District of Columbia which, it says, is a more convenient forum. While, for reasons not disclosed, the District of Columbia might be, for the Company, a more desirable jurisdiction, there can be no doubt Lewis had a perfect right to sue the Company in Maryland and if Winston really is an indispensable party there is no reason why it cannot be made a third party defendant (Maryland Rule 315) upon whom service of process can be obtained under the provisions of the "long arm" statute. Code, Art. 75 §§ 94-100 (1965 Repl. Vol.). In these circumstances we are unable to discern how or why the District of Columbia would be a more convenient forum than Montgomery County, the courts of which jurisdictions are less than 20 miles apart. But we cannot see how Winston can be an indispensable party. The satisfaction of its mortgage on

Lewis' property obviously is its only interest in the matter and under the terms of the policy the Company is obliged to make payment to Winston. If, by chance, a dispute should arise as to who is entitled to the proceeds of the insurance the payment of the money into court would protect the Company against the danger of having to pay twice.

*Coates v. Pennsylvania Fire Ins. Co.*, 58 Md. 172, 177-79 (1882), (cited by neither party) we think, settles the matter. Judge Ritchie, for the Court, said:

> "The plaintiffs were the party with whom the company contracted; were the owners of the property insured, when the policy was issued, and at the time of the loss, and had paid the intermediate renewals by which the policy was kept in force.
>
> "There was no consideration moving from the mortgagee to the company; and the company assumed no enhanced risk or burden in consenting to pay the insurance money to the mortgagee. This application or disposition of the money was an arrangement, in substance, as between the assured and the mortgagee, for the greater security or indemnity of the latter, and was not of the essence of the company's obligation. The right to the money really accrued to the assured, in case of loss, by virtue of their having been the contracting party; of their property being the subject of the insurance; and of their having paid the premiums which constituted the consideration. But because of their direction simply, incorporated at their instance in the policy, and not because of any independent liability incurred to the mortgagee by the company, the mortgagee was designated as the recipient of the payment, though in fact such payment enured to their own benefit.
>
> "It is true, that by reason of this provision, the mortgagee acquired such an interest under it, that suit could have been brought by it, had it so elected. 'If * * * one person makes a promise to another for the benefit of a third, that third may maintain an action

upon it.' * * * 'In policies of insurance, it is a common practice to bring your action, either in the name of the party by whom the contract was made, or of the party for whom the contract was made.' * * * .

"The designation of a party to whom the money shall be paid over, does not destroy the legal right of the party, through whose contract the right to have the money has accrued, to demand it himself when there has been a failure to so pay it over.

"Of course, the company, in a case like the present, if willing to pay, is interested in not having to pay the money twice.

"* * * Indeed, if apprehensive of suits by both parties, the payment of the money into Court would be a ready and adequate means of, protection against separate demands. * * * ."

See also Rent-A-Car Co. v. Globe & Rutgers Fire Ins. Co., 158 Md. 169, 175-76, 148 A. 252 (1930) ; Farmers' Fire Ins. Co. v. Baker, 94 Md. 545, 51 A. 184 (1902).

The Company seems to say that the contract is actually between it and Winston and that Lewis, if insured, is only a beneficiary. It is not entirely clear what impact the Company intended this argument to have. It has long been established that a third party beneficiary may maintain an action. Hamilton & Spiegel, Inc. v. Board of Educ., 233 Md. 196, 195 A. 2d 710 (1963) ; Marlboro Shirt Co., Inc. v. American District Telegraph Co., 196 Md. 565, 77 A. 2d 776 (1951) ; Seigman ex rel. Shaffer v. Hoffacker, 57 Md. 321, 325 (1881).

The Company did not move to dismiss Lewis' appeal and we have chosen not to do so nostra sponte. It must not be supposed, however, that the same degree of forbearance will be displayed, in the future, in respect of a similar disregard of the Maryland Rules.

The judgment entered by the learned judge below will be reversed and the case will be remanded for further proceedings.

*Judgment reversed.*
*Case remanded for further proceedings.*
*Costs to be paid by the Appellee.*