LESTER MOON ET AL. *v.* RICHARD IRA WEEKS

[No. 648, September Term, 1974.]

*Decided March 18, 1975.*

The cause was argued before ORTH, C. J., and MENCHINE and MOORE, JJ.

*William W. Grant* for appellants.

*W. Dwight Stover* for appellee.

ORTH, C. J., delivered the opinion of the Court.

This appeal turns on the answer to the question what, in the contemplation of the traffic laws, is a child on a sled travelling on a street — a "vehicle", a "motor vehicle", or a "pedestrian".[1]

## STATEMENT OF THE CASE

Before we can answer this keystone question we must ascertain the posture of the case as it is before us on appeal. The true posture is not readily evident because the proceedings below were snarled. They were snarled because both the trial judge and counsel for the parties apparently did not recognize, and certainly did not follow, an applicable rule of the Maryland Rules of Procedure.

The Maryland Rules provide ways by which a civil action

---

1. The accident which gave rise to the cause of action in this case occurred on 2 December 1966. Unless otherwise indicated, statutes cited are those in effect at that time. In the main, the substance of the statutes pertinent to this case as then in effect does not differ materially from those currently in effect.

"The terms 'street', 'highway', 'roads', 'public highway' or 'public roads' shall include any highway or thoroughfare of any kind used by the public whether actually dedicated to the public and accepted by the proper authorities or otherwise. . . ." Code, Art. 66½, § 2 (a) (58) (1967 Repl. Vol.). For the current definition of "street" see Code, Art. 66½, § 1-193 (1970 Repl. Vol.).

may be disposed of at trial by the court without being submitted to the trier of fact.[2] There is one rule in this context for jury trials and another rule for non-jury trials.

Rule 552 concerns an action tried by a jury. Section a provides that in such an action a party may move, at the close of the evidence offered by an opponent or at the close of all the evidence, for a directed verdict in his favor on any or all of the issues. Section b permits a party, whose motion for a directed verdict at the close of evidence offered by an opponent was not granted, to offer evidence, but by so doing he withdraws the motion.

Rule 535 concerns a civil action tried without a jury. It provides that a party may, at the close of evidence offered by an opponent, move for a dismissal on the ground that upon the facts and law the opponent has shown no right to relief. If such a dismissal is granted, it operates as an adjudication upon the merits, unless the court otherwise specifies. In the event the motion is not granted, the party making it does not waive his right to offer evidence.

It is manifest that a motion for a directed verdict, applicable in a jury trial, may be made at the close of evidence offered by an opponent or at the close of all the evidence, but that a motion to dismiss, applicable in a non-jury case, is, as we pointed out in *Quinn Freight Lines v. Woods*, 13 Md. App. 346, 350, "in order only at the conclusion of the opponent's case and not at the conclusion of the entire case." Our observation followed the teachings of the Court of Appeals. In *Smith v. State Roads Commission*, 240 Md. 525, it discussed the motion to dismiss and the motion for a directed verdict. Stating that it was not proper for a party to move to dismiss at the close of all the evidence but was

---

2. This may also be accomplished in a criminal cause by a motion for judgment of acquittal, Rule 755 a. That motion may be made at the close of evidence offered by the State, or at the close of all the evidence. If the motion is not granted at the close of evidence offered by the State, the accused may offer evidence without having reserved the right to do so, but by so doing, he withdraws his motion, § b. When trial is by a jury, appellate review of the sufficiency of the evidence may be had only upon a denial of the motion made at the close of all the evidence. *Williams v. State*, 5 Md. App. 450.

proper only at the close of his opponent's evidence, it said, at 539-540:

> "The main purpose of the rule [Rule 535] is to allow a party to test the legal sufficiency of his opponent's evidence before submitting evidence of his own. Should he prevail at this point he avoids the necessity of going further and as well the risk that his own evidence may supplement his opponent's evidence enough to provide the missing legal sufficiency. If he waits until the close of all of the evidence then the motion becomes a nugacity because all of the evidence is then before the trier of facts and the determination of its legal sufficiency becomes an inseparable and necessary part of his decision. In jury cases, where a different climate prevails, a motion for a directed verdict offered at the close of all of the evidence gives the trial judge an opportunity to make ε quantitative evaluation of the evidence, not to inform any decision to be made by him, but only to assess the propriety of allowing the jury to make findings of fact. The jury does the deciding; the judge simply sees to it that they have enough material to work with."

This was iterated by the Court in *Lewis v. Germantown Insurance Company*, 251 Md. 535, 540-541. Although Rule 535 says nothing about a waiver of the motion to dismiss, if upon its denial evidence is offered by the party making the motion, it necessarily follows that it is waived upon the offering of evidence. This is so because there is then a different quantum of evidence before the court, the legal sufficiency of all of which becomes, as the Court said in *Smith, supra,* "an inseparable and necessary part" of the court's decision.

There has been an unfortunate tendency on the part of both bench and bar to ignore the distinctions between Rule 535 and Rule 552. This was forcefully pointed out by the

Court of Appeals in *Isen v. Phoenix Assurance Co.*, 259 Md. 564, 569-570:

"In *Smith v. State Roads Commission*, 240 Md. 525, 539 (1965), we pointed out that in actions tried by the court without a jury a 'motion for a directed verdict' is not a proper motion. We explained carefully and at length that Rule 535 'was designed especially for non-jury situations.' We noted in *Duck v. Quality Custom Homes, Inc.*, 242 Md. 609, 611 (1966), an appeal from the Circuit Court for Montgomery County, that Rule 535 had not been complied with. In *Southwestern Mines Inc. v. P. & J. Coal Company, Inc.*, 244 Md. 180, 184 (1966), we said 'this [a motion for a directed verdict] is not a proper motion.' In *Lewis v. Germantown Insurance Company*, 251 Md. 535, 536-537 (1968), another appeal from the Circuit Court for Montgomery County, we chided the bar for its disregard of the Maryland Rules, especially Rule 535. We cited nine cases in each of which some mention had been made of the bar's dereliction in this regard. In *Antietam-Sharpsburg Museum, Inc. v. William H. Marsh, Inc.*, 252 Md. 265, 267 (1969), we said, 'Once again we remind both *bench* and bar that the motion for a directed verdict, in these circumstances, is improper. Maryland Rule 535.' (Emphasis added.) Perhaps we should expect that there will always be some members of the bar who will be unaware of the Rules and our decisions concerning them but one would suppose that by now, trial judges, being fully informed, would either reject or refuse to act upon such improper motions. That we have chosen once more to twit both bench and bar in this regard should not provoke speculation that we have done so for any reason other than to focus attention upon the Rules and to remind all hands that they are not guides to the practice of law but precise rubrics 'established to promote the orderly and efficient administration

of justice and [that they] are to be read and followed.' *Brown v. Fraley,* 222 Md. 480, 483 (1960)."

That there are some who have not yet received the message is apparent from the case before us.

On 7 October 1969 Lester Moon *et uxor* and Lester Moon as next friend and natural guardian of Kathryn Marie Moon (Moon) instituted an action in tort in the Circuit Court for Garrett County against Richard Ira Weeks (Weeks). The action was tried without a jury on 18 June 1974. At the close of evidence offered by Moon, Weeks moved for a directed verdict. The motion was denied. A motion for a directed verdict was made again at the close of all the evidence. It was then granted. Moon noted an appeal on 5 July 1974. We dismissed the appeal *nostra sponte* as premature because no final judgment had been entered. On 22 August "final and absolute judgment" in favor of Weeks was entered by order of the court below, with further order that Moon pay the costs. We consider this as a final judgment in favor of Weeks for costs. On 20 September Moon appealed from the judgment. It is this appeal which is now before us.[3]

In *Isen* the Court declared, at 570, that although at times in the past it had not dismissed an appeal because of disregard of Rule 535, "[i]t must not be supposed", quoting *Lewis,* at 543, "that the same degree of forbearance will be displayed, in the future, in respect of a similar disregard of the Maryland Rules." We observe that under Rule 886, applicable to the Court of Appeals, and under Rule 1086, applicable to this Court, a non-jury case will be reviewed upon the law and the evidence. Such review by the appellate court is in nowise dependent upon a motion made under Rule 535. Therefore, we do not even consider dismissing the appeal. To dismiss the appeal for disregard of Rule 535 in

---

**3.** On 7 October 1974, Weeks, belatedly recognizing that the proper motion to be made in a non-jury case was a motion to dismiss, moved this Court to return the record to the trial court so that the judgment entered "may be on a motion to dismiss". We denied the motion. To prevent further and undue delay, we preferred to treat the motion for a directed verdict, patently improper, as a motion to dismiss, and because it was made at the close of all the evidence, it was, as we have indicated, a nugacity in any event.

these circumstances, would, in any event, accrue to the benefit of the party who failed to heed the Rule, and this would result in a palpable injustice.

## ISSUE FOR DECISION

The propriety of the grant of the motion (which we treat as a motion to dismiss) on which the judgment was entered is not before us. As we have seen, it was a nugacity because made at the close of all the evidence. Thus, we deem that the action was decided on the merits. What is before us, therefore, is whether the trial judge was right or wrong in rendering a judgment in favor of Weeks and against Moon. There are two aspects in the consideration of this. The first concerns the law and the second concerns the evidence. The first aspect is whether the court below was erroneous in its application of the law. The second aspect is whether it was clearly erroneous in its judgment on the evidence. Rule 1086. *Knowles v. Binford,* 268 Md. 2.[4]

## THE FACTS

Tallahassee Street, running east and west, and Shenandoah Avenue running north and south, intersect in a residential area in the town of Loch Lynn, Garrett County, Maryland. Tallahassee Street has a descending grade from

---

4. Rule 1086, applicable to the Court of Special Appeals of Maryland, is the same as Rule 886, applicable to the Court of Appeals of Maryland. The Rules read:

"When an action has been tried by the lower court without a jury, this Court will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses."

In reviewing the action of the court below, when the question is one of the evidence, we must consider evidence in a light most favorable to the prevailing party; and if substantial evidence was presented in support of the trial court's determination, then it is not clearly erroneous. *Delmarva Drill Co. v. Tuckahoe,* 268 Md. 417, 424, citing *A. S. Abell Co. v. Skeen,* 265 Md. 53, 55; *Crosse v. Callis,* 263 Md. 65, 70-71; *Frisoen v. Trapp,* 258 Md. 629, 633. When the question is one of the law, the "clearly erroneous" provisions do not apply. *Sica v. Retail Credit Co.,* 245 Md. 606, 611; *Pappas v. Modern Mfg. Co.,* 14 Md. App. 529, 538.

east of its intersection with Shenandoah Avenue through its intersection with Roanoke Street, parallel to and a block west of Shenandoah Avenue. On 2 December 1966 there were no traffic control signs or devices at the intersection of Tallahassee Street and Shenandoah Avenue. There was a street light on the northeast corner of the intersection. There was snow on the streets and they were slick and icy. It was about 10 degrees above zero. Kathryn Marie Moon, 7 years of age, and her brother, David, were sledding in the late afternoon of that day. The usual course was down Tallahassee Street through the intersection of Shenandoah Avenue to Roanoke Street. About 6:20 that afternoon the weather was cloudy and the moon was shining. David heard their mother call them for supper and went to fetch Kathryn, who at the moment, was talking to the janitor at a school located at the southwest corner of Tallahassee Street and Shenandoah Avenue. She persuaded David to let her take one more ride down the slope. She went first and David followed on his sled, both on the north side of Tallahassee Street, because that side of the street was clear, although cinders had been spread on the south side. About this time Weeks, driving his automobile north on Shenandoah Avenue, on the way to church to work on the sanctuary, was approaching its intersection with Tallahassee Street. David saw the headlights of Weeks's automobile and called to Kathryn. She did not see the automobile or its headlights, but heeding her brother's warning she turned her sled north into Shenandoah Avenue toward a driveway, at right angles to and leading into the east side of Shenandoah Avenue, under the street light. Cinders prevented her from actually entering the driveway. As she was getting off her sled she was struck by the right front fender of Weeks's automobile.

Weeks, called by Moon as an adverse witness, testified that he lived in the neighborhood and knew Kathryn, David and their parents. He had driven about three blocks when the accident occurred. The car headlights were on, "it was dark". He had no mechanical trouble with his car during the three block drive, was not suffering from fatigue or illness, had not consumed any alcoholic beverage within the preceding eight hours — "I don't drink" — and had no need

to wear spectacles. As he was proceeding across the intersection of Tallahassee Street and Shenandoah Avenue at a speed of 8 to 10 miles per hour, after looking to the right and left and seeing nothing, he heard "a thump hit my right front wheel, and I looked up the hill and saw David, and then I applied my brakes and slid over the bank" into a ditch. David testified that the automobile went half a block before it stopped, but according to a Maryland State Police Officer, called to the scene, it stopped "just beyond the intersection." Weeks said he stopped 8 to 10 feet past the intersection. Weeks got out of his car, went back to the intersection and saw Kathryn lying unconscious on the right hand side of the street almost directly under the corner light. He went to a nearby house, called for an ambulance and the police and attempted to notify Kathryn's parents.

## THE LAW

The "Motion for Directed Verdict" was made in writing.[5] One of the grounds stated therein was:

> "That Section 1-149 of Article 66$\frac{1}{2}$ of the Annotated Code of Maryland defines a motor vehicle to be 'motor vehicle means a vehicle which is self-propelled or propelled by electric power obtained from overhead trolley wires, but not operated upon rails' and a sled is not within the meaning of a motor vehicle. Since a sled is not within the meaning of a motor vehicle, a sled would not have any right of way over a motor vehicle upon the highway."

In the argument on the motion at the close of the evidence offered by Moon, Weeks's attorney referred to the above statute and asserted that a sled does not come within that classification. The judge said: "I would have to concur with

---

5. There is noted thereon in handwriting under the date 6-18-74 and over the initials of the trial judge:

"Denied at the end of Pltf.'s case.
Granted at end of Def.'s case."

that." The attorney continued: "So therefore — that the sled actually does not have a right-of-way upon the road, because if you go back to the section dealing with the right-of-way, it only deals with *motor* vehicles." The court replied: "Yes". When Moon's attorney was arguing the motion he agreed that a sled is not a motor vehicle and urged that it was a pedestrian. The court interjected: "It's not a pedestrian, it's a child on a sled." The transcript reads:

"BY MR. GRANT [Moon's Attorney]: Well, yes, sir, but it's — if the sled is not a vehicle, then it's obviously a pedestrian. I mean you have to — you either have to be dealing with a vehicle case or a pedestrian case. In either case, you've got the same situation. If you want to consider it some kind of a vehicle, which the defendant argues it's not, you've got someone approaching from the right. If you want to consider it a pedestrian, then you've got an intersection then, and a pedestrian has a right-of-way at an intersection. Now, as for the matter of the —

BY THE COURT: Mr. Grant, can you show me one case that says that?

BY MR. GRANT: Yes, sir.

BY THE COURT: I'd like to see it.

BY MR. GRANT: I — I — I don't —

BY THE COURT: Can you show me one case where a child on a sled has the right-of-way on the public highway?

BY MR. GRANT: Yes, sir, I — I'll — I intend to cite the cases to your Honor.

BY THE COURT: I'd be interested in seeing them." [6]

---

6. The record does not disclose the citation of such cases. In denying the motion at the close of the evidence offered by Moon, after argument by counsel, the court said: "All right, Mr. Grant, let me do it this way, and I think we can save everybody a lot of time. Mr. Stover [Weeks's Attorney], I am strongly inclined to grant your motion, but I think for the sake of the record I will deny the motion at this time. All right, that will resolve the matter for the time being."

In deciding the case at the close of all the evidence, the court said:

"Well, it is a most unfortunate, tragic situation because this child has been very, very seriously injured, but in order to recover damages, the law provides you must prove three things: You must prove that the defendant was negligent and was the sole cause of the injury. You must prove that the defendant was not guilty of any contributory negligence. Thirdly, you must prove your damages. There is no question but that you proved your damages, just no question at all, but I haven't found one iota of testimony to hold this defendant guilty of any negligence. The motion will be granted, and I would add to that, without even passing on the question of contributory negligence, because of the youth of these children, their tender years, but even so, to permit or to do it, sledding on this street, certainly is an indication that — well, they shouldn't have been doing it, I'll put it that way, and I am compelled to grant the motion. I say, it was a most tragic thing and this little girl has suffered untold pain and injury, but I cannot put the blame on the defendant in this case. The motion is granted."

The court had previously observed in denying the motion:

"I searched my notes and I have one little check mark about the testimony, there is no evidence whatsoever of speed, there's no evidence whatsoever of the violation of any rules of the road, there's no evidence whatsoever that he wasn't on his own side of the road or that he didn't have a right to properly proceed. But the little check mark that I have here, one of the witnesses, the brother, I think, testified that the car — I don't know how accurate this testimony is, but his testimony was that the car went a half block beyond the intersection where the impact occurred, now that's

the only testimony in the whole case that is even an iota of negligence." [7]

What the court and counsel below did not consider is that the vehicle laws of this State distinguish between "motor vehicles" and "vehicles". Code, Art. 66½, § 2 (a) (27) (1967 Repl. Vol.) reads:

> "Motor Vehicle. Every vehicle which is self-propelled except vehicles operated exclusively upon rails or propelled by electric power obtained from overhead wires, but not operated upon rails or tracks." [8]

Section 2 (a) (67) reads:

> "Vehicles. Every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices used exclusively upon stationary rails or tracks or propelled by electric power obtained from overhead trolley wires, but not operated upon rails or tracks." [9]

We agree that a sled is not a "motor vehicle". But we think it obvious that it falls squarely within the definition of "vehicle" when a person is transported upon it upon a highway.[10] See *Weissberg Corp. v. N. Y. Underwriters Insurance Co.*, 260 Md. 417, 429.

---

7. As we have indicated, evidence offered through the Maryland State Police Officer, was in conflict with the testimony of David that Weeks's automobile went a half a block before it stopped. According to the Officer it was "just beyond the intersection". By ultimately finding not "one iota of testimony to hold [Weeks] guilty of any negligence", it is apparent that the court assessed the Officer's credibility, weighed his testimony, and accepted it.

8. Now Art. 66½, § 1-149. It defines motor vehicle to mean "a vehicle which is self-propelled or propelled by electric power obtained from overhead trolley wires, but not operated upon rails."

9. Now Art. 66½, § 1-209. It defines vehicle to mean "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway."

10. We also agree that a child upon a sled on a street is not a pedestrian. The meaning of pedestrian was not set out in the motor vehicle laws until 1970. Acts 1970, ch. 534, § 1, codified as Art. 66½, § 1-159 reads:

By express terms, certain provisions of the Vehicle Laws speak in terms of "motor vehicles" and others in terms of "vehicles". In the light of the definitions, we believe that this was deliberate.[11] Thus, we conclude that Code, Art. 66½, § 231 (a) (1967 Repl. Vol.) applied to "vehicles" within the meaning of § 2 (a) (67). It provided:

> "Except as hereinafter provided, all *vehicles* or trackless trolleys shall have the right-of-way over other *vehicles* or trackless trolleys approaching at intersecting public roads from the left, and shall give right-of-way to those approaching from the right." (emphasis supplied) [12]

Therefore, on our finding that the sled in this case was a "vehicle", § 231 (a) is applicable.

We find support for our view in *Hempfling v. Patterson,* 229 F. Supp. 391 (D.C. Md. 1964).[13] In that case a child on a sled went through a stop sign and collided with an automobile. Sections 233 and 244 of the traffic laws, dealing with the duty to stop at a stop sign and at the entrance to a through highway, spoke in terms of "vehicles". The court quoted § 2 (a) (27) and (67) and said, at 395:

> "The court has been referred to no Maryland case bearing upon the question of whether or not a sled is a 'vehicle' within the laws relating to traffic. If, as would appear to be the case, the use of the broader word 'vehicle' (rather than motor vehicle) is advertent in sections 233 and 242, a strong

"Pedestrian means any person afoot." See *Braswell v. Burrus,* 13 Md. App. 513. It seems that this was in substance the meaning of pedestrian accepted in appellate opinions prior to the enactment of the statute. See *Harris v. Bowie,* 249 Md. 465.

11. We note that Article 66½, formerly entitled "Motor Vehicle Laws", is now titled "Vehicle Laws". Acts 1970, ch. 534, § 1.

12. As now codified as Art. 66½, § 11-401, the words "trackless trolleys" are deleted, "highways" is substituted for "public roads" and an exception, "except at through highways, for which separate provision is made in this article", is added at the end of the section.

13. There are numerous decisions in other states involving motor vehicle — sled accidents and the relative duties of the parties involved, but they are not helpful in the posture of this case. See Annot., 109 A.L.R. 941, supplementing Annot., 20 A.L.R. 1433 and the subsequent case service.

argument can be made that one riding in a wagon, or upon a sled or other gravity operated mechanism, is in or upon a device by which person or property may be transported, and is the driver of a 'vehicle' required to come to a full stop at the entrance to a through highway or at a stop sign, and yield the right of way. Indeed, apart from the physical problem of how a stop is to be effected, the need for the complete stop by a brakeless vehicle is, if anything, greater than in the case of the ordinary 'motor vehicle.' "

The court observed in a footnote, n. 9, at 395-396: "See the broad language in Fletcher v. Dixon, 107 Md. 420, 427, 68 A. 875, 878, and R. & L. Transfer Company v. State, 1931, 160 Md. 222, 153 A. 87, involving a coasting wagon in which the court quoted with approval from a Pennsylvania case (Eastburn v. United States Express Co., 225 Pa. 33, 73 A. 977) stating the law applicable to sleds." The court said that, if necessary, it was prepared to hold that because the sled was a vehicle, the automobile, in the circumstances, had the right of way. The holding was unnecessary, however, because the court found there was absence of negligence on the part of the driver of the automobile.[14]

## DECISION

It is manifest that the judge below based his decision in substantial part on his finding that there was "no evidence whatsoever of the violation of any rules of the road". He erred in his application of the law. He reached his conclusion because he did not consider that the sled was a vehicle. As a vehicle, however, it had the benefit of the right-of-way statute. It is firmly established that rights of way, created by the Art. 66$^1/_2$ in 1943, have an important bearing upon the question of negligence and somewhat relax

14. The evidence showed that the motorist was proceeding along an icy through street at 15 to 20 miles an hour when he saw a 9$^1/_2$ year old child coasting on a sled in an intersecting street. He had brought his automobile to a stop within 65 to 70 feet and had pulled over almost to the left curb when the sled ran into his automobile.

the strict rule of contributory negligence. *Crawford v. Baltimore Transit Co.*, 190 Md. 381; *Caryl v. Baltimore Transit Co.*, 190 Md. 162; *Brown v. Bendix*, 187 Md. 613. But, as a vehicle, it was also subject to the provisions of Art. 66½, § 271 (a) (1967 Repl. Vol.):

> "Every vehicle upon a highway within this State at any time when there is not sufficient daylight to render persons, vehicles, animals and substantial objects on the highway clearly discernible at a distance of 300 feet ahead, shall display lighted lamps and illuminating devices as hereinafter respectively required for different classes of vehicles subject to exceptions with respect to parked vehicles as hereinafter stated." [15]

Code, Art. 66½, § 278 (1967 Repl. Vol.) provided:

> "All vehicles, including animal-drawn vehicles, and including those referred to in § 270 (b) not hereinbefore specifically required to be equipped with lamps, shall at the times specified in § 271 hereof be equipped with at least one lighted lamp or lantern exhibiting a white light visible from a distance of 300 feet to the front of such vehicle and with a lamp or lantern exhibiting a red light visible from a distance of 300 feet to the rear." [16]

---

**15.** As amended by Acts 1970, ch. 534, § 1, it is now codified as Art. 66½, § 12-201 and reads:

"Every vehicle upon a highway within this State at any time when, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly discernible at a distance of 1,000 feet ahead shall display lighted lamps and illuminating devices as hereinafter respectively required for different classes of vehicles, subject to exceptions with respect to parked vehicles, and further that stoplights, turn signals, and other signaling devices shall be lighted as prescribed for the use of these devices."

**16.** Now codified as Art. 66½, § 12-216, it provides as amended:

"Every vehicle, including animal-drawn vehicles and vehicles referred to in § 12-101 (c) [(e)], not specifically required by the provisions of this part to be equipped with lamps or other lighting devices, at all times specified in § 12-201 of this article shall be equipped with at least one lamp displaying a white light visible

We have a further observation. In *State, Use of Taylor v. Barlly,* 216 Md. 94, 101-102, the Court of Appeals discussed at what age a child may be guilty of contributory negligence. It held, at 102, that a child, 5 years of age or over, may be guilty of contributory negligence, declining to enlarge the ruling in *Miller v. Graff,* 196 Md. 609, that a child four years of age cannot be guilty of contributory negligence. It affirmed the *Miller* holding in *Farley v. Yerman,* 231 Md. 444, 450. But the Court added in *Taylor,* at 102, "* * * a child of tender years is bound only to use that degree of care which ordinarily prudent children of the same age, experience and intelligence are accustomed to use under the same circumstances, and they assume the risk only of dangers, the existence of which they know, or which, in the exercise of this degree of care, they should have known." We noted in *Oddis v. Green,* 11 Md. App. 153, 158:

> "However, in *Billings v. Shaw,* 247 Md. 335, the Court made clear that the 'tender years rule' did not apply to a boy of ten, the age of Billings. It said flatly: 'Billings was old enough to be bound by the rules of the road and to be guilty of contributory negligence, which would bar his recovery as a matter of law.'"

See *Leonard v. Bratcher,* 258 Md. 186; *Kane v. Williams,* 229 Md. 59. *Compare Henkelmann v. Metropolitan Life Ins. Co.,* 180 Md. 591; *Bozman v. State, Use of Cronhardt,* 177 Md. 151.

As we have indicated, at the close of the evidence in a civil action tried without a jury, all the evidence is before the trier of fact. The determination of the legal sufficiency of that evidence becomes an inseparable and necessary part of the Court's decision, which then involves both applicable law and facts adduced. We think that Moon is entitled to a new

---

from a distance of not less than 1000 feet to the front of the vehicle, and shall also be equipped with two lamps displaying red lights visible from a distance of not less 1000 feet to the rear of the vehicle, or as an alternative, one lamp displaying a red light visible from a distance of not less than 1000 feet to the rear and two red reflectors visible from all distances of 600 to 100 feet to the rear when illuminated by the upper beams of head lamps."

338

trial, tried pursuant to the appropriate Maryland Rules and under applicable laws applied to facts duly found upon material, relevant and competent evidence presented.[17]

> *Judgment reversed; case remanded for a new trial; costs to be paid by appellee.*

---

17. An action at law shall be tried before the court without a jury unless an election be made for a jury. Rule 343 a. A plaintiff shall make such election at the time of filing of the original declaration. Rule 343 b. A defendant shall make such election at or before the time of filing his first responsive pleading to the merits, which places the case at issue as to him. Rule 343 c.

The Rule concerning election of a jury trial was proposed to eliminate the time consuming business of docket calls in open court and to permit those responsible for assignment of cases to ascertain, at an early stage, which cases must be set for jury trial and which cases may be assigned for trial by the court. *Maryland Community Developers, Inc. v. State Roads Commission,* 261 Md. 205, 211. It appears from the docket entries in the case before us that "the time consuming business of docket calls in open court" is still conducted in the Circuit Court for Garrett County.