**Jeremy POMANI, a minor, by Sharlene Parkhurst POMANI, his mother and natural guardian, and Sharlene Parkhurst Pomani, individually, Appellants,**

v.

**Jack Lynne UNDERWOOD, M.D., Respondent.**

**No. CX–84–869.**

Court of Appeals of Minnesota.

April 2, 1985.

Lisa Gram Gustafson, Houge & Gustafson, Brooklyn Center, for appellants.

David C. Hutchinson, Audrey Zibelman, Geraghty, O'Loughlin & Kenney, St. Paul, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and PARKER and WOZNIAK, JJ.

## OPINION

PARKER, Judge.

Appellant Sharlene Pomani brought suit individually and on behalf of her son, Jeremy Pomani, against Jackie Lynne Underwood, M.D., for damages to Jeremy allegedly sustained during his birth. After a two-week trial the jury found no negligence on Dr. Underwood's part. Sharlene Pomani appeals from an order denying a new trial, contending that she is entitled to a JNOV or a new trial because the verdict is not justified by the evidence. She also contends that Jeremy was denied a fair trial because her misconduct prejudiced him. We affirm.

## FACTS

In the fall of 1980 Dr. Underwood was enrolled in the family practice residency program at the University of Minnesota Medical School. As part of her residency training she worked at the Family Practice Center of North Memorial Hospital, where she provided obstetrical care for Sharlene Pomani before and during the delivery of her son, Jeremy.

Mrs. Pomani was admitted to the hospital in labor at 7:50 p.m. on September 21, 1980. A fetal electrode was attached to the baby's head at 11:50 p.m. to monitor his heart rate. At about 12:45 a.m. Dr. Underwood administered a paracervical block to relieve pain, which increased the speed of labor. At 1:00 a.m. the fetal monitor revealed that the baby's heart rate was declining, indicating fetal distress. At 1:12 a.m. Dr. Underwood asked for a consultation with a board-certified obstetrician and was informed that an obstetrician was on his way to the hospital to see another patient. He arrived at the hospital at 1:47 and delivered Jeremy with forceps at 1:51 a.m.

Jeremy was born with severe brain damage and will need custodial care for the rest of his life. His mother brought suit against North Memorial Hospital, the University of Minnesota Family Practice Center, the obstetrician who delivered Jeremy, and Dr. Underwood. All the defendants except for Dr. Underwood were dismissed before the case went to the jury.

One of appellant's theories at trial, and the only one argued on appeal, was that Dr. Underwood was negligent in failing to consult a board-certified obstetrician earlier because appellant's labor was failing to progress. Hospital rules required a consultation for lack of normal progress during the first stage of labor. Appellant's expert at trial was Albert Kapstrom, M.D., of Los Angeles. He testified that Mrs. Pomani's labor did not progress adequately and that Dr. Underwood was negligent in failing to obtain a consultation earlier. A pediatric neurologist testified that Jeremy's brain damage was caused by asphyxiation during the birth process.

The defense expert, Harry Farb, M.D., of Minneapolis, testified that Mrs. Pomani's labor progressed adequately and that she and Jeremy received excellent care. He

and another defense expert testified that Jeremy's brain damage was caused by septic shock from a group B strep infection, which he contracted before birth. Appellant does not deny that Jeremy had a strep infection at birth but disputes that the infection caused his injuries.

Toward the end of the trial the judge called counsel to the bench and ordered appellant's attorney off the record to control Mrs. Pomani. The next day there was a hearing in chambers regarding her behavior, at which Dr. Underwood's attorney described Mrs. Pomani's "staring and giggling" at Dr. Underwood and other defense witnesses during a recess and after court. He said she approached the witnesses and called them liars. As they were leaving the building for the day, Mrs. Pomani approached them, attempted to block their way, called them liars, and said "I hope you fall on your faces." The trial court admonished counsel that further misconduct would result in contempt sanctions. Appellant never suggested during the trial that any jurors had seen the incident in the lobby.

In her motion for a new trial appellant for the first time argued that Jeremy did not receive a fair trial because of her misconduct. Her attorney submitted an affidavit stating that after the trial Mrs. Pomani told her that when she approached Dr. Underwood in the lobby she had intended to push the doctor down the escalator and that two or three jurors had witnessed the incident. Dr. Underwood and another witness submitted affidavits stating that no jurors were present during the altercation. The trial court denied the motion and said in its memorandum:

> [I]t has not been established that any misconduct outside the courtroom was witnessed by any jurors or that it in any way affected their deliberations. As to the conduct in the courtroom, Mrs. Pomani was noticed to be staring at defendant. The Court felt this might get out of hand unless plaintiff was admonished to stop it. When the Court's request was conveyed to Mrs. Pomani through her attorneys and outside the hearing of the jury, the practice stopped. No other actions by Mrs. Pomani that could be considered prejudicial were noted. The alleged misconduct did not rise to the level where it influenced Jeremy's case with the jury, or to the extent that a new trial should be granted.

## ISSUES

1. Did the trial court err in refusing to grant a JNOV or a new trial because the verdict was not justified by the evidence?

2. Did the trial court err in refusing to grant Jeremy Pomani a new trial because his mother's misconduct denied him a fair trial?

## DISCUSSION

### I

Appellant argues that the trial court erred in failing to grant a judgment notwithstanding the verdict or a new trial under Minn.R.Civ.P. 59.01.

■ A JNOV may be granted only when the evidence is so overwhelming on one side that reasonable minds cannot differ as to the proper outcome. *See Lamb v. Jordan*, 333 N.W.2d 852, 855 (Minn.1983). All the evidence must be taken into account and viewed in the light most favorable to the verdict, and this court may not weigh evidence or judge credibility. *Id.* Because there was conflicting, credible expert testimony on both negligence and causation, the trial court did not err in refusing to grant a JNOV.

■ A new trial should not be granted under Minn.R.Civ.P. 59.01(7) unless the verdict is

> so contrary to the preponderance of the evidence as to imply that the jury failed to consider all the evidence or acted under some mistake or from some improper motive, bias, feeling, or caprice, instead of honestly or dispassionately exercising its judgment.

*Id.* at 855–56. The authority to grant a new trial should be exercised with caution,

and this court will usually defer to the exercise of that authority by the trial court, which "has the feel of the trial." *Id.* at 856.

Appellant argues that jury bias is apparent because the jury did not find Dr. Underwood negligent for violating the hospital rule requiring consultation when labor fails to progress. Hospital rules are admissible as evidence of the standard of care but are not conclusive on the issue of negligence. *Boland v. Garber,* 257 N.W.2d 384, 386 (Minn.1977). Furthermore, there was conflicting evidence on whether Mrs. Pomani's labor failed to progress, and thus it was for the jury to decide whether Dr. Underwood violated the hospital rule. Because the jury believed the defense witnesses does not mean the jury was biased.

We conclude that the verdict was supported by the evidence. Both the plaintiff and the defendant offered plausible theories to explain Jeremy's condition, and a verdict either way would have been supported by the evidence. This is not one of the "exceptional instances" requiring a retrial. *See Lamb v. Jordan,* 333 N.W.2d at 856.

## II

Appellant also argues that the trial court erred in failing to grant Jeremy Pomani a new trial because he was prejudiced by her misconduct. A new trial may be granted for prejudicial conduct or argument only to prevent a miscarriage of justice, and the trial court's decision will be reversed on appeal only for a clear abuse of discretion. *See Meagher v. Kavli,* 256 Minn. 54, 62, 97 N.W.2d 370, 376 (1959).

Rule 59.01 provides in relevant part that a new trial may be granted for misconduct of the "jury or prevailing party." Minn.R. Civ.P. 59.01(2). The rule does not specifically allow a new trial for misconduct of a nonprevailing co-party.

Appellant did not request a *Schwartz* hearing to ascertain whether her conduct had a detrimental effect on jury deliberations. *See Schwartz v. Minneapo-*

*lis Suburban Bus Co.,* 258 Minn. 325, 104 N.W.2d 301 (1960). If a party fails to request a *Schwartz* hearing after becoming aware of facts indicating potential misconduct, the issue will not be considered in a motion for a new trial or, therefore, on appeal. *See Zimmerman v. Witte Transportation Co.,* 259 N.W.2d 260, 262 (Minn. 1977). Although appellant argues that her attorney did not become aware of the extent of her misconduct until after the trial, there was no reason a *Schwartz* hearing could not have taken place then to substantiate her claim on the record.

Even assuming that Mrs. Pomani's misconduct would provide grounds for a new trial under Rule 59.01, we agree with the trial court that she failed to establish prejudice. There were conflicting affidavits on whether jurors witnessed the incident in the lobby. The only evidence appellant offered was the affidavit of her attorney, submitted after the verdict was received, containing some general hearsay statements. This is insufficient to establish any prejudice stemming from the incident outside the courtroom.

No other potentially prejudicial actions by Mrs. Pomani, except for "staring" at the defendant, were observed in the courtroom. We must defer to the trial court's conclusion that this conduct did not influence Jeremy's case.

## DECISION

The evidence supports the verdict. Sharlene Pomani's misconduct was not shown to have prejudiced her son's case. The trial court did not err in denying judgment notwithstanding the verdict or in refusing a new trial.

Affirmed.