**Viola RADLOFF as trustee for the heirs and next of kin of Leona D. Krienke and Fred C. Krienke, Appellant,**

v.

**Marlin JANS, et al., etc., Respondents,**

**The Crane Company, et al., Defendants.**

No. C5–88–27.

Court of Appeals of Minnesota.

Aug. 23, 1988.
Review Denied Oct. 26, 1988.

Michael A. Zimmer, Patton, Hoversten, Berg & Zimmer, P.A., Waseca, for Radloff.

Jeffrey A. Hanson, Dunlap, Keith, Finseth, Berndt & Sandberg, P.A., Rochester, for Jans.

Heard, considered, and decided by FOLEY, P.J., and SCHUMACHER and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Fred and Leona Krienke died when a fire destroyed their rural Waseca County home. Alleging that the fire was caused by a boiler located in the Krienke basement, appellant trustee Viola Radloff sued defendant Crane Company (the manufacturer of the boiler) and respondent Marlin Jans d/b/a Burmeister Hardware Store (who installed and serviced the boiler). Radloff and Crane Company settled prior to trial.

Radloff alleged negligent installation of the boiler, negligent failure to warn, and negligent maintenance of the boiler. The jury returned a verdict finding Burmeister not negligent and awarding no damages. This appeal is from an order denying Radloff's motion and amended motion for a new trial. We affirm.

## FACTS

In November 1973, Fred Krienke purchased a new boiler from Warren Burmeister to replace the one in his home. Krienke relied upon the store personnel to select and install an appropriate boiler.

While installing the new boiler in the Krienke basement, Burmeister discovered that the chimney connector hole (the point at which the boiler was connected to the chimney) was completely blocked with sand from deteriorating chimney mortar. He removed the sand with a vacuum cleaner.

Burmeister made numerous service calls to the Krienke home before his retirement in 1980 and each time he cleaned sand out

of the bottom of the chimney. After Burmeister's retirement, the service calls became less frequent. Marlin Jans testified that he serviced the boiler several times after 1980 and that he removed sand from the chimney each time. The last service call made was in October 1981, sixteen months before the fire.

Even though Burmeister and Jans advised Krienke at different times to install a chimney liner because they believed that the sand interfered with the operation of the boiler, Krienke refused, apparently because he could not afford it. At one point, Burmeister even told Krienke that without a chimney liner he might "blow himself into orbit."

At trial, Radloff called a consulting engineer who testified that in his opinion the origin of the fire was near the boiler, particularly in the wooden joists and floor boards located directly above the boiler and next to the chimney connector. He testified that the cause of the fire was the accumulation of sand at the base of the chimney which caused the stack temperature to increase and ignite the wooden portions of the house. He testified that the hazard created by the accumulation of sand could have been avoided by installation of a chimney liner.

Jans and Burmeister called a mechanical engineer who testified that the point of origin of the fire could not be determined within a reasonable degree of engineering certainty. The engineer explained that the "fire pattern" could not be relied upon because fuel oil had been consumed in the basement during the fire. He also indicated that he disagreed with the consulting engineer's opinion because it was based on a number of factors which were unknown and upon which the engineer had to make assumptions.

Radloff's evidence established that expenses totalling $4,077.16 were incurred, representing costs for the ambulance, funeral, grave site, and gravestone, and the value of the Krienke home, which was destroyed by the fire, was $18,500.

Shortly after the jury began deliberations, they asked to view the videotape of the fire scene which had been introduced by Radloff as an exhibit. That request was relayed to the trial court by the bailiff; the court in turn relayed its refusal to the jury through the bailiff.

The special verdict form consisted of seven questions on liability and five on damages; the jury was expressly instructed to answer the questions on damages regardless of their answers to the liability questions. The jury found no negligence on the part of Jans, Burmeister or Crane Company, found Fred Krienke negligent but not the direct cause of his and his wife's death, and answered "$00.00" in response to all five damage questions.

After examining these responses, the trial court asked the jury if it intentionally failed to answer the damage questions, and excluded funeral and similar expenses (which were essentially undisputed at trial). The foreman stated:

> Well, your Honor, as regards the home, it did not come out in the testimony whether these people had insurance, but everybody has fire insurance, so we naturally figured that they did. It also did not come out, I believe, in the testimony that these people had any life insurance, which could possibly have taken care of their funeral costs.

After consulting with counsel, the court reinstructed the jury as follows:

> [Y]ou are not to take into consideration whether or not there is any insurance involved. The fact that there may or may not is not relevant and would not change that figure. In other words, you should assess any damages that you find without regard to whether or not anyone recovered any insurance.

Approximately two hours later, the jury returned and the foreman advised the court that the jury was unable to agree on any changes. The jurors were polled and each indicated they were in agreement on all the answers.

## ISSUES

1. Did the jury commit prejudicial misconduct when it considered the possible existence of insurance coverage?

2. Is the jury's finding of no liability supported by the evidence?

3. Is the damage verdict the product of passion and prejudice?

4. Did the trial court abuse its discretion in refusing to allow the jury to view the videotape evidence during deliberations?

## ANALYSIS

Denial of a motion for a new trial under Minn.R.Civ.P. 59.01 rests almost entirely within the discretion of the trial court and will be reversed only for a clear abuse of discretion. *Markowitz v. Ness,* 413 N.W.2d 843, 846 (Minn.Ct.App.1987).

## I

Radloff first contends that she is entitled to a new trial under rule 59.01(1) and (2) because the jury improperly considered the possible existence of insurance coverage when it answered the damage questions. The question posed is whether a jury's independent consideration of insurance as part of the deliberation process may be so prejudicial as to warrant a new trial. Other jurisdictions have generally found that where reference to insurance is casual or properly rebuked, or where the discussion was stopped by a juror and the possibility of insurance was not thereafter considered, a new trial is unnecessary. *See* Annotation, *Discussion, During Jury Deliberation, Of Possible Insurance Coverage As Prejudicial Misconduct,* 47 A.L.R.3d 1299, 1303 (1973). To warrant a new trial, it must be shown that the misconduct was prejudicial, such that it affected "the impartiality of the jury" or disqualified "them from exercising the powers of reason and judgment." *Id.* at 1304.

■ Absent evidence to the contrary, it must be assumed that the jury in this case followed the court's additional instructions to disregard the possible existence of insurance in their deliberations. Thus, any prejudice caused by the jury's actions was cured. *See id.,* at 1334–35 (citing cases in which no prejudicial misconduct found where jurors' speculation regarding a par-ty's insurance status came to attention of trial judge, who admonished jury not to take account of insurance considerations).

## II

■ Radloff contends that she is entitled to a new trial under rule 59.01(7) because the jury's finding that Jans and Burmeister were not negligent is contrary to law and unsupported by the evidence. She limits her arguments on this issue to whether the warning given by Jans and Burmeister to the Krienkes was adequate, contending Jans and Burmeister failed to warn Krienke of the exact nature of the danger involved. While the existence of a duty to warn is a legal question, breach of that duty and the adequacy of the warning are questions for the jury. *Balder v. Haley,* 399 N.W.2d 77, 81 (Minn.1987) (citing *Germann v. F.L. Smithe Machine Co.,* 395 N.W.2d 922 (Minn.1986)).

■ Both Burmeister and Jans testified that they told Fred Krienke on different occasions that he needed a chimney liner, although they admit they did not specifically warn Fred Krienke of a fire hazard, other than the one occasion when Burmeister did tell Fred Krienke that if he did not install a liner he might "blow himself into orbit."

That statement is sufficient to support a finding by the jury of an adequate warning of danger. In addition, expert testimony that the origin and cause of the fire could not be determined could sustain a finding of no causal connection between any lack of warning and the injuries sustained. *See Balder,* 399 N.W.2d at 81–82.

## III

■ Radloff contends that the verdict awarding no damages appears to have been given under the influence of passion and prejudice and that she is entitled to a new trial under rule 59.01(5). A damage award which is less than the proven or undisputed damages may be overturned as the product of passion or prejudice unless the jury has also determined that there is no liability on the part of the defendant, and that finding

is supported by credible evidence. *Wefel v. Norman*, 296 Minn. 506, 507–08, 207 N.W. 2d 340, 341 (1973). Here the jury found Jans and Burmeister not negligent on credible evidence.

## IV

Radloff finally argues that the trial court abused its discretion by refusing to allow the jury to view the videotape exhibit during deliberations. "The withholding of exhibits from the jury is a matter within the sound discretion of the trial court." *Pakul v. Montgomery Ward Co.*, 282 Minn. 360, 364, 166 N.W.2d 65, 68 (1969) (citing *Jensen v. Dikel*, 244 Minn. 71, 69 N.W.2d 108 (1955)).

The jury in this case apparently asked the bailiff if they could view the videotape, a request which the bailiff relayed to the court. The court in turn apparently informed the bailiff to tell the jury that they could not see the exhibit. (There is no record of what the bailiff told the jury except by way of affidavit.) Communications from a jury during deliberations should be in writing, and any reply should be made on the record preferably with consent of counsel. Minnesota Civil Trialbook, Rule 34.

In addition, a court should give "proper instructions" to the jury when it decides to withhold an exhibit from them. *Adrian v. Edstrom*, 304 Minn. 52, 59, 229 N.W.2d 161, 166 (1975). It does not appear that any instructions were given to the jury in this case. The reply given by the bailiff to the jury could easily have given them the impression that the videotape was not an important piece of evidence.

Despite what we consider to be a serious error on the part of the trial court and one that should be studiously avoided in the future, we do not believe that the court's actions constitute prejudicial error warranting a new trial. The jury had already seen the videotape twice during trial and had at their disposal numerous still photographs portraying the same general information.

## DECISION

The order denying appellant's motion and amended motion for a new trial is affirmed.

Affirmed.