Susan M. and Robert J. BOSCHEE, co-trustees for the Next of Kin of Troy John Boschee, Decedent, Appellants,

v.

Julia Margaret DUEVEL, et al., Respondents.

No. C6–94–1745.

Court of Appeals of Minnesota.

April 25, 1995.

Review Denied June 14, 1995.

Randall J. Fuller, Robert F. Mannella, Babcock, Locher, Neilson & Mannella, Anoka, for appellants.

Frederick L. Grunke, Rajkowski Hansmeier, Ltd., St. Cloud, for respondents.

Considered and decided by HARTEN, P.J., HUSPENI and MINENKO,* JJ.

## OPINION

EUGENE MINENKO, Judge.

Appellants, co-trustees of the heirs of decedent Troy Boschee, brought a wrongful death action against Julia and Joseph Duevel, the driver and the owner of the automobile with which Boschee had a fatal collision while in-line skating. The jury found Boschee was 85 percent causally negligent and Julia Duevel 15 percent. Appellants moved for a new trial and judgment notwithstanding the verdict (JNOV). The motions were denied and judgment for respondents was entered. Appellants appeal the denial of its motions. We affirm.

## FACTS

On the evening of April 1, 1991, nineteen-year-old Troy Boschee was in-line skating with two friends, Donald Gonse and Jesse Erickson, north along County Road 5 in Anoka County. They were skating on the right-hand side of the road, in either the roadway or on the nine-foot paved shoulder. It was dark and the area was not lit by area streetlights.

A car also going north on County Road 5, driven by respondent Julia Duevel, approached the three skaters from behind. Duevel was driving approximately 40 miles per hour, below the 55 miles-per-hour speed

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-pointment pursuant to Minn. Const. art. VI, § 10.

limit, and was using her low-beam headlights. Upon perceiving Duevel's car, Gonse and Erickson crossed the road to the left shoulder; Boschee remained on the right. Duevel testified that she saw and heard Gonse and Erickson, but did not see Boschee until her car struck him. Boschee died on April 4, 1991, of injuries sustained in the accident. His parents, as co-trustees for his heirs, brought a wrongful death action against Julia Duevel and her husband, the automobile owner.

Testimony differed on the critical issue of where Boschee was when the accident occurred: whether he was in Duevel's lane of travel or whether Duevel left the roadway and struck Boschee on the shoulder. Boschee's body ultimately came to rest on the shoulder. Law enforcement officers who investigated the accident located markings indicating points where Boschee's body touched down as he tumbled following impact. Two officers testified that this evidence was insufficient to determine a point of impact. Both parties called experts to testify on this issue. Appellants' expert testified to a specific point of impact in the shoulder, while respondents' expert indicated it was impossible to ascertain the precise point of impact. He stated, however, that the evidence was consistent with an impact within the travel lane.

To illustrate his testimony, appellants' expert prepared a videotape of a computer reenactment of the accident. The respondents objected to the videotape as lacking in foundation and prejudicial. Concerns about the expert's testimony fixing a precise point of impact and testimony about x-rays were also raised. The trial court required an offer of proof away from the jury. During the offer of proof, which took approximately half a day, respondents' counsel was permitted to cross-examine the expert as to the bases for his opinions. The trial court then ruled the testimony and videotape were admissible.

On the fourth day of trial, appellants moved for a mistrial due to an incident that occurred in the audience. An exchange of words took place between Gonse and respondent Joseph Duevel as respondents were leaving the courtroom. Several of the jurors noticed the incident and one reported it, indicating she believed some of the "younger spectators" were harassing respondents and caused them to leave. The trial court asked the jurors about what they saw and whether it would affect their impartiality. After determining no prejudice had occurred, the trial court denied appellants' mistrial motion.

Early in the trial, the trial court addressed appellants' request that it rule Boschee was not a pedestrian for purposes of Minn.Stat. Ch. 169, Highway Traffic Regulation Act. The trial court said it was unlikely it would find Boschee was a pedestrian. Later, after both parties rested, respondents requested an instruction that in-line skates are a "vehicle" be given. The trial court did so, finding it necessary to classify Boschee's legal status to put the statutory instructions in context. Written jury instructions, which distinguished "vehicles" from "motor vehicles" and the statutory requirements imposed upon each, were given to the jury to use during their deliberations.

Responding to a special verdict form, the jury found both Boschee and Duevel had been causally negligent. Damages for past and future pecuniary loss were found to be $124,000; the parties stipulated to the amount of medical and funeral expenses. Appellants were precluded from receiving damages, however, because Boschee was found more negligent (85 percent) than Duevel (15 percent). Appellants moved for a new trial or for JNOV on the liability issue. The trial court denied the motions, and this appeal followed. Respondents filed a notice of review, citing evidentiary rulings as errors.

### ISSUES

1. Did the trial court err in ruling as a matter of law that in-line skates constitute a vehicle for traffic code purposes?

2. Did the trial court err in denying appellants' motions for a new trial?

3. Did the trial court err in denying appellants' motion for judgment notwithstanding the verdict?

## ANALYSIS

### 1. Boschee's Legal Status as In–Line Skater

■ The first issue presented on appeal is the legal status of in-line skates when they are being used as a means of travel upon Minnesota public highways. This is a case of first impression in Minnesota. Because it involves the construction of statutes, it is a question of law and fully reviewable on appeal. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

■ The trial court found Boschee's in-line skates should be deemed a "vehicle" for purposes of Minn.Stat. Ch. 169. "Vehicle" is broadly defined: " 'Vehicle' means every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices used exclusively upon stationary rails or tracks." Minn.Stat. § 169.01, subd. 2 (1990). Vehicles are distinguished from motor vehicles because the "motor vehicle" definition excludes vehicles moved solely by human power. *See* Minn.Stat. § 169.01, subd. 3. In-line skates fall within the definition of "vehicle": as Boschee's actions show, a person using in-line skates is capable of being transported on a highway via the skates, and does so solely by human power.

"Pedestrian" is another classification in the statutes that arguably could be applied to in-line skaters. A pedestrian is "any person afoot or in a wheelchair." Minn.Stat. § 169.01, subd. 24. Out-of-state cases dealing with persons on roller skates, foot-propelled scooters, and sleds have held that persons using such devices are pedestrians for traffic regulation purposes. *See, e.g., Pekter v. Price*, 206 N.J.Super. 355, 502 A.2d 1157, 1158–59 (App.Div.1985) (affirming determination roller-skater was pedestrian under statute defining pedestrian as " 'a person afoot' "). The rationale is that

> [w]hile it is true that a pedestrian is ordinarily understood to be one who travels on foot, nevertheless the mere circumstance, that he or she has attached to his or her feet roller skates, or ice skates, or walks on stilts, or uses crutches, or is without

feet and propels himself or herself along by means of a chair, or by some other mechanical device, does not clothe him or her, in a broad and general sense, with any other character than that of a pedestrian.

*Eichinger v. Krouse*, 144 A. 638, 639 (N.J.Err. & App.1929). These cases suggest that an in-line skater also should be ruled a pedestrian.

Given the manner in which the in-line skates were being used here, however, as transportation on a 55 miles-per-hour highway, it is reasonable to distinguish in-line skates from roller skates, scooters, and sleds. More importantly, we question the propriety of rationalizing the use of a device, like roller skates or in-line skates, to accommodate the word "afoot" in the pedestrian statute when "vehicle" by definition encompasses in-line skates. Precedent also exists, furthermore, for concluding that persons not walking are not "afoot." *See Moon v. Weeks*, 25 Md.App. 322, 333 A.2d 635, 641–42 (1975) (interpreting similar definitions for "pedestrian" and "vehicle," and finding sled was "vehicle" when being used to transport person upon highway). Appellants cite *Terrill v. Virginia Brewing Co.*, 130 Minn. 46, 49, 153 N.W. 136, 137 (1915), in which the Minnesota Supreme Court rejected the argument that a boy's sled was a motor vehicle, as grounds for ruling that in-line skates cannot be "vehicles." This case is not controlling; the trial court here ruled that in-line skates were a vehicle, not a *motor* vehicle.

■ Appellants also cite several statutes governing vehicles which cannot, by their terms, reasonably be applied to in-line skaters; they contend these provisions show the legislature did not intend to include in-line skaters within the definition of "vehicle." We believe, however, that the broad definition given to "vehicle" denotes a legislative intent to regulate any mode of transportation used on Minnesota's highways, whether or not specifically contemplated at the time the statutes were enacted. Our primary object in interpreting statutes is ascertaining and giving effect to legislative intent. *Metropolitan Sports Facilities Comm'n v. General Mills, Inc.*, 470 N.W.2d 118, 125 (Minn.1991). The definition of "vehicle" is very broad, so it

is not unreasonable to include within the definition devices that, by their nature, will not be subject to all of the regulations that govern vehicles, even though no specific exemption appears.

■ We reject appellants' contention that Boschee should simply be deemed a "person." "Person" is defined as including "every natural person, firm, copartnership, association, or corporation." Minn.Stat. § 169.01, subd. 23. As this definition suggests, "person" is used to refer to those who own or operate the devices regulated; "persons" as such are not regulated. Thus, appellants' approach leaves unregulated those using in-line skates.

■ The best solution to this issue would be for the legislature to address the legal status of in-line skaters; but until they do, we must act within the confines of the high-way traffic regulation act. Because in-line skates fit within the "vehicle" definition, it is more appropriate to classify them as such than leave them unregulated. Ideally, in-line skaters should avoid travelling upon the highway; if, however, they must do so, they must comply with pertinent statutory provisions—particularly in regard to appropriate equipment—that are in place for their safety and the safety of other travellers. We therefore conclude the trial court did not err in ruling that in-line skates constitute a "vehicle" under chapter 169.[1] We note, in so holding, that the provisions of chapter 169 are limited to the operation of vehicles upon public highways (and to property owned or leased by the University of Minnesota). See Minn.Stat. § 169.02, subd. 1 (1994).

■ Even if the trial court had incorrectly categorized Boschee's legal status, the error did not substantially affect appellants' rights. See Minn.R.Civ.P. 61 (erroneous ruling is not grounds for new trial unless inconsistent with substantial justice and affects substantial rights of the parties). Appellants' concern with the ruling involves the jury instruction that, at night, vehicles must have either lights or reflectors. As the trial court found, however, it appears likely the jury would

have imposed such a duty under general negligence principles. The issues of whether Duevel could have or should have seen Boschee was heavily litigated. The jury was sufficiently aware of the issue to consider whether Boschee was negligent in not taking greater safety precautions when in-line skating on a highway at night. Furthermore, if Boschee had been ruled a pedestrian, an instruction that a pedestrian is required to walk on the left-hand side of a highway, facing oncoming traffic would have been appropriate. See Minn.Stat. § 169.21, subd. 5. Because Boschee was on the right, this instruction would also raise a prima facie case of negligence on Boschee's part. Therefore, the trial court did not abuse its discretion by refusing to grant a new trial based on these grounds.

## 2. Denial of Motion for New Trial

Appellants claim the trial court erred in denying their motion for a new trial. "[T]he granting of a new trial rests in the discretion of the trial court, and the trial court's decision will be reversed only for a clear abuse of discretion." *Klein v. Klein,* 366 N.W.2d 605, 606 (Minn.App.1985), *pet. for rev. denied* (Minn. June 27, 1985).

■ Appellants first cite Minn.R.Civ.P. 59.01(a), under which a moving party is entitled to a new trial for an irregularity in the proceedings. An irregularity is a "failure to adhere to a prescribed rule or method of procedure not amounting to an error in a ruling on a matter of law." 3 Douglas D. McFarland & William J. Keppel, *Minnesota Civil Practice* § 2411 (2d ed. 1990). To establish a claim, appellants must prove (1) an irregularity occurred and (2) they were deprived of a fair trial. *Nachtsheim v. Wart-nick,* 411 N.W.2d 882, 890 (Minn.App.1987), *pet. for rev. denied* (Minn. Oct. 28, 1987).

The first irregularity appellants discuss is the denial of their mistrial motion stemming from the "altercation" between Gonse and Duevel. They contend the danger of prejudice warrants a new trial because jurors seemed to attribute the misbehavior to

---

1. The jury instructions distinguished between "vehicles" and "motor vehicles," eliminating the potential for confusion regarding the requirements for equipment imposed upon each.

Gonse, whose conduct in turn may have been attributed to appellants.

Steps taken by a trial court in response to an "irregularity" can cure the potential prejudice to a party. *See Norwest Bank Midland v. Shinnick,* 402 N.W.2d 818, 824 (Minn.App.1987) (no prejudice from change in order of proof; trial court explained change to the jury); *Radloff v. Jans,* 428 N.W.2d 112, 115 (Minn.App.1988) (absent contrary evidence, court must assume jury followed judge's instructions, which cured potential prejudice), *pet. for rev. denied* (Minn. Oct. 26, 1988). The trial court's response here cured any potential prejudice to appellants. The trial court immediately questioned the jurors about whether the incident would affect their impartiality and reminded them of its earlier instruction to decide the case based on the evidence and instructions. Furthermore, the juror who reported the incident said she believed the parties had acted "admirably." The trial court found appellants were not prejudiced. Given these facts, we cannot find it clearly abused its discretion.

Appellants also claim they were prejudiced by the "late" ruling that in-line skates constitute a vehicle. Even if the timing of the ruling was an irregularity, appellants have not shown that they were deprived of a fair trial. Appellants claim they would have adjusted their trial strategy to present additional proof on reflectorized materials, headlight/visibility issues, and the reflectiveness of Boschee's clothing. These issues were already litigated. Appellants have not indicated what evidence they would have introduced had the ruling been made earlier, nor did they request a continuance or to have the case reopened. The trial court did not clearly abuse its discretion in denying a new trial on this ground.

Appellants also complain about the cross-examination of their expert during the offer of proof, contending it went beyond legitimate inquiry. It is unclear, however, that the trial court would have admitted the contested opinions had respondents' objections been handled while the expert, David Daubert, testified before the jury. The trial

court indicated the technologies underlying the opinions were sufficiently novel to warrant inquiry away from the jury. It also found appellants were not prejudiced because they were able to make a full offer of proof on admissibility, allowing it to conclude an adequate foundation existed. This court usually defers to the trial court, "which 'has the feel of the trial,'" in its determinations of whether to grant new trial. *See Pomani v. Underwood,* 365 N.W.2d 286, 289–90 (Minn. App.1985) (quoting *Lamb v. Jordan,* 333 N.W.2d 852, 856 (Minn.1983)). Appellants are not entitled to a new trial based on these grounds.

Another irregularity appellants cite is the trial court's denial of their request to voir dire respondents' expert regarding previously undisclosed opinions. Appellants have not shown how they were deprived of a fair trial on these grounds. Therefore, no abuse of discretion has been established.

Appellants also contend that grounds for a new trial existed under Minn. R.Civ.P. 59.01(c), which permits a new trial for accident or surprise. They claim respondents' expert was permitted to give opinion testimony not disclosed in discovery. Appellants' only example is that respondents did not disclose that an opinion would be given regarding where in relation to the fog line the car and Boschee's body were at impact or that the evidence was consistent with an impact in the roadway. This argument has no merit. Respondents' interrogatories answer 2(e)(5) states that the expert would render the following opinion:

> The physical evidence at the scene does not establish the exact position of decedent in relation to the fog line at the time of impact. The evidence is consistent with an impact point to the left of the fog line.

Court's Exhibit E. Furthermore, respondents did not move for a continuance, which is necessary to obtain a new trial on these grounds. *See Phelps v. Blomberg Roseville Clinic,* 253 N.W.2d 390, 394 (Minn.1977) ("failure to suppress is not an abuse of discretion where the opposing party does not seek a continuance").

Finally, appellants cite Minn.R.Civ.P. 59.01(g). This subsection permits a trial court to grant a new trial if the verdict is not justified by the evidence. However, "[t]he appellate court will substitute its judgment for that of the jury only if there is no evidence reasonably tending to sustain the verdict or if the verdict is manifestly and palpably against the weight of the evidence." *Norwest Bank Midland,* 402 N.W.2d at 825.

▋ Substantial evidence exists in the record upon which the jury could conclude Boschee had been more negligent than Duevel. The jury heard testimony that (1) Duevel remained in her lane of travel until after the accident; (2) Boschee was not wearing bright clothing or reflectorized materials, although skating along a highway at night; and (3) Boschee may have been in the roadway and not on the shoulder and, under the conditions of the accident, Duevel did not have adequate time to see and react to his presence. Although contested, this testimony appears to be credible; if believed, it would sustain the verdict finding Boschee 85 percent causally negligent. Therefore, a new trial is not warranted. *See Pomani,* 365 N.W.2d at 290 (where verdict for either side would be supported by the evidence, case does not present circumstances demanding retrial).

## 3. Denial of Motion for Judgment Notwithstanding the Verdict

▋ Appellants also argue that the trial court erred in denying their motion for JNOV. Whether a JNOV should be granted is a question of law. *Edgewater Motels, Inc. v. Gatzke,* 277 N.W.2d 11, 14 (Minn.1979). A JNOV " 'may be granted only when the evidence is so overwhelming on one side that reasonable minds cannot differ as to the proper outcome.' " *Lamb,* 333 N.W.2d at 855 (quoting 4 D. McFarland & W. Keppel, Minnesota Civil Practice § 2402 (1979 & Supp.1982)). All the evidence must be considered and viewed in the light most favorable to the verdict. *Id.* The reviewing court cannot weigh the evidence or assess witness credibility. *Id.*

▋ If conflicting, credible testimony is presented on the issues of negligence and causation, a trial court does not err in denying a motion for JNOV. *Pomani,* 365 N.W.2d at 289. Where one party's testimony, if believed, would support the verdict, the conclusion that reasonable minds could not differ cannot be reached. *Lamb,* 333 N.W.2d at 855.

▋ Conflicting testimony was given by eyewitnesses and experts on issues of where, in relation to the fog line, the accident occurred or whether it was possible to make this determination and whether Boschee was wearing dark or light clothing on his upper body. Several conclusions could be reached, depending upon whose testimony is credited and whose is disbelieved. Therefore, a JNOV would not be appropriate.

Appellants emphasize their expert's testimony, arguing that Daubert's opinions, based on the laws of physics, compels the conclusion that Boschee was on the shoulder when he was struck by Duevel's car. This evidence, if believed, would have sustained a verdict for appellants. But the jury also heard expert testimony indicating the point of impact could not be definitely fixed. "Where conflicting opinions of expert witnesses have a reasonable basis in fact, it must be left to the trier of fact to decide who is right and the decision will not be overturned on appeal." *Hunt v. Estate of Hanson,* 356 N.W.2d 323, 325 (Minn.App.1984), *pet. for rev. denied* (Minn. Jan. 9, 1985). The jury could have chosen not to credit Daubert's testimony. *See Rud v. Flood,* 385 N.W.2d 357, 360 (Minn.App.1986) (jury does not have to accept an expert's testimony). Appellants are not entitled to a JNOV.

Because we affirm the decision in respondents' favor, we do not reach the issues raised in respondents' notice of review.

## DECISION

The trial court did not err by ruling that in-line skates, when used to transport a person upon a highway, constitute a "vehicle" under Minn.Stat. ch. 169. The trial court also did not err by denying appellants' motions for a new trial or JNOV.

**Affirmed.**